COMMONWEALTH *vs.* WALTER GOULD.

Middlesex. October 6, 1992. - November 19, 1992.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Capital case, Assistance of counsel, New trial. *Constitutional Law,* Assistance of counsel.

Upon review under the standard set forth in G. L. c. 278, § 33E, this court concluded that a defendant convicted of first degree murder had not been denied effective assistance of counsel by his trial counsel's alleged failure to investigate adequately defenses based on the defendant's mental state at the time of the offense [710-712], by counsel's alleged concession of malice in his closing argument and indication that the defendant was guilty of second degree murder [712-714], or by counsel's failing to request that the jury be instructed on involuntary manslaughter [714-715].

INDICTMENT found and returned in the Superior Court Department on June 17, 1987.

The case was tried before *J. Harold Flannery,* J., and a motion for a new trial was considered by him.

*David P. Hoose* for the defendant.

*Rosemary D. Mellor,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court found the defendant guilty of murder in the first degree on the basis of premeditation and extreme atrocity or cruelty.[1] A subsequent motion for a new trial (see Mass. R. Crim. P. 30 [b], 378 Mass. 900 [1979]) was denied by the trial judge without a

---

[1]The defendant was also convicted of larceny over $100, which was placed on file, and larceny of a motor vehicle on which a prison term was imposed to run concurrently with his life sentence on the murder conviction. The defendant has not appealed from these separate convictions, and they need not be addressed. *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975).

hearing. Represented by new counsel on appeal, the defendant argues that his trial counsel provided him with constitutionally inadequate representation, and that the judge erred in denying his motion for a new trial. We examine the ineffective assistance claim under the standard set forth in G. L. c. 278, § 33E, whether there is a substantial likelihood that a miscarriage of justice has occurred. We, therefore, ask as to this claim whether "there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). We conclude that no error appears on any issue argued. We also conclude that, although the defendant has not argued for relief under G. L. c. 278, § 33E, there is no reason to question the fairness of the verdict. Accordingly, we affirm the defendant's conviction of first degree murder.

The Commonwealth's case contained the following evidence.[2] On June 4, 1987, the body of the victim, the defendant's seventy-one year old grandmother, was found in her apartment in Hudson by two of her friends. Officer James Murphy of the Hudson police indicated that the victim had been discovered near a smashed coffee table lying on her side, half-in and half-out of a tipped-over chair, face down in a pool of blood. Next to her head the officer noticed a decanter wrapped in a blood-stained magazine. Near the body were several knitting needles, one of which was smeared with blood. Additionally, the police found in the kitchen an opened pocketbook and a trash can containing blood-stained tissue. Strewn on the victim's bed were several jars, opened and empty.

The chief medical examiner for the Commonwealth, an expert in anatomic and forensic pathology, testified that the victim's death was caused by blunt force injuries to her head and neck and that these injuries were consistent with the victim's having been struck multiple times by a glass decanter

---

[2]The defendant did not testify, and no evidence was presented in his case.

wrapped in a magazine. The medical examiner indicated that the victim's left eyeball was torn open and the orbit bone fractured, and that there were additional injuries to the victim's head, ribs, and forearms. The medical examiner also described four small puncture wounds of the left chest area which he felt were consistent with being caused by the knitting needles. These wounds, however, were not a factor in the victim's death.

On June 3, 1987, the nineteen year old defendant, driving his girl friend's automobile, picked up a male friend and drove to a beach in Hudson where they drank vodka mixed with fruit punch. Then, after spotting the victim leaving a store, the defendant drove his friend and himself to the victim's apartment so the defendant could borrow money from her. The friend remained outside in the automobile while the defendant went inside to see the victim. Other witnesses testified that prior to June 3, the defendant had repeatedly asked the victim for money, but that she had refused to loan him anything until he repaid previous loans. When the defendant returned to the vehicle from the victim's apartment after about a half-hour, the friend noticed blood on the defendant's hands. The defendant told his friend that he had cut his hand and admitted that he had hit the victim. He also showed the friend a wallet containing credit cards and other cards which he admitted were taken from the victim. The defendant eventually threw the wallet out of the automobile's window; at the defendant's request, his friend disposed of the credit cards and other cards in a similar fashion.

At about 6:30 P.M. that same day, a neighbor, who had heard loud talking in the victim's apartment earlier in the day, saw the defendant drive off in the victim's automobile. The next day the defendant again drove to his friend's home, this time in the victim's automobile. The defendant told his friend that the victim had left him the automobile while she went on a trip, and that she had also left him a purse full of coins for gas money. The defendant later sold antique coins at a coin shop, indicating to the proprietor that the coins had been given him by the victim as a wedding present. Later

that day, the defendant drove to visit his girl friend with whom he had argued earlier. He offered the girl friend a necklace and two diamond rings. He said the victim had given him the rings to use as engagement rings.

The defendant was arrested on June 5. When told by the police that the victim had been murdered, he replied that he "didn't know anything about that." Shortly thereafter, however, he told the police that the victim was upset at seeing him with his friend, that he and the victim had argued, and that he "went off the stack and pushed her." The defendant went on to surmise that the victim had tripped, hit her head, or possibly had a heart attack because she was having trouble after heart surgery. The defendant denied that he used anything to hit the victim. The defendant's forearms and palms tested positive for the presence of blood at the time of his arrest. After his arrest, the defendant first told his girl friend that he had pushed the victim, and that a vase had fallen off a table and struck her on the head. About a week before his trial commenced, the defendant told his girl friend that his friend had held the victim's hands and pushed her, while he (the defendant) had taken her money.

1. The defendant alleges that his trial counsel provided him with ineffective assistance in three respects: (a) by failing adequately to investigate defenses based on the defendant's mental state at the time of the offense; (b) by conceding malice in his closing argument and indicating that the defendant was guilty of second degree murder; and (c) by failing to request that the jury be instructed on involuntary manslaughter.

(a) The defendant acknowledges that his trial counsel moved before trial for his examination pursuant to G. L. c. 123, § 15 (*a*) (1990 ed.), to determine competency to stand trial and criminal responsibility, and that he initially refused a § 15 (*a*) evaluation.[3] The defendant's trial counsel also filed a motion for funds to retain a private psychiatrist, but

---

[3]The defendant was subsequently evaluated at the Cambridge jail for competency and was found competent to stand trial.

this motion was not pressed. It is here that ineffective assistance is claimed. In the defendant's view, an examination by a private psychiatrist might have provided information which his trial counsel could have used to assert claims about his mental state, namely, that he did not possess the ability to premeditate, to harbor malice aforethought, or to commit murder with extreme atrocity or cruelty.

As a general proposition, a failure by trial counsel to investigate a mental state claim can constitute ineffective assistance, if facts known, or reasonably accessible, to counsel could raise a reasonable doubt about a defendant's mental condition. See *Commonwealth* v. *Doucette,* 391 Mass. 443, 458-459 (1984); *Osborne* v. *Commonwealth,* 378 Mass. 104, 111 (1979). The difficulty, however, with the defendant's position on this issue is that there are no facts to support the claim he now maintains should have been investigated.

The record of the trial demonstrates that the defendant was lucid and discriminating in his words and conduct before and after the murder.[4] That record, therefore, is devoid of any evidence that the defendant lacked criminal responsibility. There was also no evidence of prior mental illness or hospitalization. See generally *Commonwealth* v. *Cole,* 380 Mass. 30, 36 (1980). The defendant's statement that he "went off the stack and pushed [the victim]" described his version of the events and is not indicative of any mental problem.

The defendant refers to three paragraphs of the affidavit he filed to support his motion for a new trial set forth below.[5] He appears to suggest that there should have been investiga-

---

[4]There was evidence that the defendant and his friend shared from a half-pint to a pint of vodka mixed with fruit juice on the day of the murder. There was no evidence that the defendant appeared intoxicated either before or after the murder, and thus no basis for a claim that he was so overcome by the effects of alcohol that he could not form the intent necessary to commit first degree murder by reason of premeditation or extreme atrocity or cruelty. See *Commonwealth* v. *Sires, ante* 292, 298-301 (1992); *Commonwealth* v. *Sama,* 411 Mass. 293, 297-299 (1991).

[5]"3. Prior to my trial I had no discussions with my attorney regarding an independent psychiatric exam.

tion of the matters mentioned in paragraph 5 of the affidavit. Nothing has been submitted to amplify on what the defendant's previous emotional or substance abuse problems might have been or what his past evaluation as a juvenile disclosed. More particularly, there is no indication that any of these matters might have had a shred of relevance to his mental condition at the time of the victim's killing.[6] In short, nothing in the record remotely suggests that a more thorough investigation would have disclosed evidence tending to support a contention that the defendant lacked the capacity to premeditate, harbor malice, or commit murder with extreme atrocity or cruelty.[7] See *Commonwealth* v. *Stevens*, 379 Mass. 772, 773-774 (1980); *Osborne* v. *Commonwealth, supra.*

(b) The defendant's next claim of ineffective assistance pertains to his trial counsel's closing argument. He asserts that, although none of his statements to the Commonwealth's witnesses constituted an admission to second degree murder, his trial counsel abandoned his role as an advocate when he effectively pleaded his client guilty to that offense by conceding malice in his closing argument. This occurred, he says, when counsel admitted that the defendant had hit the victim

---

"4. I did have a discussion with him about going to Bridgewater, but I did not want to go there.

"5. I had received counselling for emotional problems and substance abuse problems while on probation in the Marlboro Juvenile and District Courts. I had also been referred to DYS for an evaluation when I was a juvenile."

[6]The defendant's statement that he discussed with his trial counsel the possibility of going to Bridgewater, but did not want to go there, may suggest that a lack of responsibility claim had been discussed and rejected because, if supported and successful, it could lead to a Bridgewater commitment.

[7]We would expect the defendant to make some showing that a basis for his claim exists. We do not agree with his assertion that he is in an impossible situation without knowing what a private psychiatric examination might reveal. Because no such showing was made, the judge did not err in denying the defendant's motion (accompanying his motion for new trial) for funds to be examined by a psychiatrist in order to determine whether a pretrial psychiatric examination might have assisted in his defense.

with a decanter (thereby permitting a finding of malice from the intentional use of a dangerous weapon), and when counsel indicated that second degree murder was the appropriate verdict. The inadequacy of the closing was further compounded, the defendant maintains, by trial counsel's failure to argue, based on the defendant's version of the events, that a verdict of manslaughter was the most logical and fair verdict.

We see nothing in the closing argument that might bespeak ineffectiveness. As will be discussed later in this opinion, no rational view of the evidence would warrant an involuntary manslaughter verdict. The defendant's trial counsel appears to have realized this fact. Counsel also recognized that the evidence that the victim had been bludgeoned to death by repeated blows from the decanter was virtually unassailable. The notion that the victim had died in any manner suggested by the defendant was, to say the least, farfetched, and to argue that premise would have strained credulity.

Mindful of these considerations, the defendant's trial counsel made a sufficient closing argument. Counsel emphasized the Commonwealth's heavy burden of proof, pointed out that the defendant had a good relationship with the victim, indicated that the defendant had not entered the apartment with any intent to harm the victim, and stressed that whatever went wrong was the result of a spontaneous reaction on the defendant's part. Counsel maintained that the evidence did not prove a premeditated killing or one committed with extreme atrocity or cruelty. Counsel strongly urged the jury to reject a verdict of first degree murder, to consider all alternatives, and to keep in mind that the best their collective deliberations would warrant was a verdict of second degree murder.

The argument, when read in its entirety, and in conjunction with the judge's instructions on the Commonwealth's burdens and the elements constituting the degrees of murder open on the evidence, was not, as the defendant asserts, a concession of guilt. See *Commonwealth* v. *Dunker*, 363

Mass. 792, 797 (1973). Trial counsel acknowledged the conclusiveness of the medical evidence as to the cause of death and asserted that the evidence warranted a finding of no more than second degree murder because there were no other practical options open to him. Counsel's approach was based on the most realistic and arguable version of what had transpired, taking into account those parts of the defendant's several contradictory statements that the jury might find to have some plausibility. See and compare *Commonwealth v. Griffith*, 404 Mass. 256, 263 (1989), and *Delle Chiaie v. Commonwealth*, 367 Mass. 527, 537 (1975), with *Commonwealth v. Westmoreland*, 388 Mass. 269 (1983), and *Commonwealth v. Street*, 388 Mass. 281 (1983). If successful, the closing argument could have resulted in a conviction of second degree murder. That the defendant was convicted of first degree murder demonstrates no inadequacy of counsel, but rather the near hopelessness of the defendant's position in view of the Commonwealth's evidence. See *Commonwealth v. LeBlanc*, 364 Mass. 1, 13 (1973) ("When the time came to close to the jury, counsel had evidently concluded that all he could do for his client was to try to mitigate punishment and that complete candor was the best strategy. . . . Counsel's strategy failed, but we are not on that account to say that it was impermissible"). See also *Commonwealth v. Domaingue*, 8 Mass. App. Ct. 228, 234 (1979).

(c) As a final point, the defendant argues that his counsel was ineffective in failing to request an instruction on involuntary manslaughter. This instruction would have been based either on his statement to his girl friend that he had pushed the victim and a vase had fallen off the table and hit her in the head, or on his statement to the police that he had only pushed the victim after which she might have tripped and hit her head on something or had a heart attack. The defendant asserts that this evidence warranted instruction on the theory of unlawful-act manslaughter. See *Commonwealth v. Sires*, *ante* 292, 302 n.10 (1992) ("The law of this Commonwealth recognizes unlawful-act manslaughter . . . if the unlawful act is a battery not amounting to a felony, when the defend-

ant knew or should have known that the battery he was committing endangered human life"). See also *Commonwealth* v. *Catalina*, 407 Mass. 779, 785, 787 (1990).

When the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime. *Commonwealth* v. *Campbell*, 352 Mass. 387, 392 (1967). No such instruction is necessary, and need be sought by trial counsel, when the evidence provides no "rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978). *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973). "[A] judge is not required to instruct on a hypothesis that is not supported by the evidence." *Commonwealth* v. *Santo*, *supra* at 305-306.

These principles apply here. The medical evidence indicated that the victim had incurred massive and severe injuries, resulting from multiple blows, including blows with an object like the decanter which had been inflicted with enough force to rupture the victim's eyeball and fracture her orbital bone. The victim also suffered fractures in both arms and one of her ribs and numerous abrasions. The medical examiner testified that the cause of death was "blunt force injuries to the head and neck." There was no medical evidence of a heart attack. The medical examiner expressly indicated that the victim's injuries could not have resulted from the type of fall suggested by the defendant. (There was no testimony as to the defendant's vase theory, but it is equally clear from the medical examiner's testimony that the injuries that caused the death could not have been incurred in that manner.) Even if the medical examiner's evidence conceivably could be disbelieved by the jury, there was no evidence to warrant a finding that the victim's injuries and death were brought about in any of the ways contended by the defendant. In the absence of a basis in the evidence to support either of the defendant's hypotheses, a request for an involuntary manslaughter instruction was uncalled for.

2. The defendant's motion for a new trial was, as far as now argued, based on the ineffectiveness points discussed above. The judge ruled on the motion as noted below.[8] For all the reasons previously discussed, this ruling was correct.[9] See *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981).

3. Although the defendant has sought review under G. L. c. 278, § 33E, only as to the issues discussed above, we have examined the whole case to determine whether justice requires that a verdict of a lesser degree of guilt be entered or a new trial ordered. See *Commonwealth* v. *Brown*, 376 Mass. 156, 166-168 (1978). No such relief is appropriate.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[8]"The defendant's motion will be denied without a hearing. *Commonwealth* v. *Stewart*, 383 Mass. 253, 260 (1981). First, the defendant has not raised a substantial issue concerning his mental state at the time of either the trial or the crime. Smith, Criminal Practice and Procedure . . . 349, § 2087 (1983). In September of 1987, before the trial, he declined to be examined by a Cambridge Court Clinic psychiatrist, there was no claim or evidence of lack of responsibility or competency thereafter, and the most that can be said now, according to an affidavit by his present counsel . . . is that he should be 'examined by a psychiatrist in order to determine whether such an examination if performed prior to trial might have assisted the defendant.' Such speculation is not an evidentiary showing at all, much less a substantial one. *Stewart*, above, 383 Mass. at 260.

"Second, defendant's trial counsel, who is known to this court as a seasoned, resourceful trial lawyer, fought hard, but he had nothing to work with. The Commonwealth's evidence of the defendant's guilt was overwhelming."

[9]The judge appears to have also rejected the defendant's affidavit filed in support of the motion, or viewed it as raising nothing to warrant a hearing. The judge could permissibly do this. See *Commonwealth* v. *Thomas*, 399 Mass. 165, 167-168 (1987).