## COMMONWEALTH *vs.* ISONIEL VELAZQUEZ.[1]

No. 03-P-461.

Hampden. April 15, 2004. - August 20, 2004.

Present: CYPHER, GRASSO, & KAFKER, JJ.

*Armed Assault with Intent to Murder. Malice. Practice, Criminal,* Assistance of counsel, Instructions to jury, Lesser included offense. *Witness,* Impeachment.

At the trial of indictments charging armed assault with intent to murder, in violation of G. L. c. 265, § 18(*b*), where the only live issue at trial was the identity of the assailant and no evidence of justification, excuse, or mitigation was introduced, the judge's omission of malice and its definition in her instructions to the jury did not warrant reversal of the defendant's convictions, where the instructions mirrored, in all material respects, the model jury instruction on assault with intent to murder, and were based on case law readily reconcilable with the law regarding the appropriate instructions to be given in murder cases [670-675]; further, as the instructions were not given in error, they did not violate art. 12 of the Massachusetts Declaration of Rights [675], and trial counsel was not ineffective in failing to object to the omission of an instruction on malice from the jury instructions [675].

A criminal defendant failed to demonstrate that trial counsel rendered ineffective assistance by failing to object to the prosecutor's impeachment of an alibi witness with that witness's pretrial silence [675-676] or by failing to request jury instructions on an honest but mistaken identification [676] or on a lesser included offense [676-677], neither of which were raised by the evidence; moreover, the defendant failed to demonstrate that the cumulative errors of trial counsel deprived him of a fair trial [677].

INDICTMENTS found and returned in the Superior Court Department on July 17, 2001.

The cases were tried before *Bertha D. Josephson,* J.

*Claudia Leis Bolgen* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

---

[1] Also known as Isoniel Nieves.

CYPHER, J. After a trial in the Hampden Superior Court, a jury convicted the defendant, Isoniel Velazquez, of armed assault with intent to murder (G. L. c. 265, § 18[b]), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A[b]), unlawful carrying of a firearm (G. L. c. 269, § 10[a]), and unlawful possession of ammunition (G. L. c. 269, § 10[h]). The defendant argues that malice is an essential element of armed assault with intent to murder and asserts that its omission in the jury instructions warrants reversal. In addition, the defendant argues that trial counsel was ineffective when he (a) failed to object to the prosecution's improper attempt to impeach an alibi witness; (b) failed to request an "honest but mistaken" identification instruction; (c) failed to object to the judge's ruling not to charge on the lesser included offense of armed assault with intent to kill, reversing her earlier decision to give such an instruction; and (d) finally, that the combination of trial counsel's errors created a substantial risk of a miscarriage of justice.

The jury could have found the following facts. On June 14, 2001, Gerardo Orbe helped his friend, Waldemar Torres, move from an apartment on Kibbe Street to an apartment on Hancock Street in the city of Springfield. At about 1:30 P.M., after making several trips between the two locations with Torres's motor vehicle, Orbe returned to the Kibbe Street area. As Orbe drove down Kibbe Street, he saw a red car parked in front of Torres's apartment. A young woman standing on the sidewalk next to the motor vehicle was talking to the driver. Orbe drove passed Torres's apartment. While stopped at a stop sign, Orbe looked in his rearview mirror and saw the woman point toward the car he was driving. Sensing that something was afoot, Orbe headed toward the police station.

The red car followed Orbe and pulled alongside his vehicle, into the lane for oncoming traffic. The passenger in the front seat was hanging out of the window on the passenger side of the vehicle with a gun in his hand. The passenger said something, which Orbe did not understand, and then began to shoot at Orbe. The passenger fired several shots in Orbe's direction. Seven or eight bullets struck Orbe's vehicle before a final shot struck Orbe. Orbe pulled his vehicle to the side of the

road, and the red car stopped in front of it. After shots were fired in Orbe's direction, the red car drove off. Orbe then exited his vehicle and collapsed on the sidewalk. Officer Donald Quinn was the first officer to arrive on the scene. Before being taken to Baystate Medical Center, Orbe, who was in a great deal of pain, was only able to tell Officer Quinn that a red Dodge Stealth had been involved.

Shortly after the incident, off duty police Officer Joselito Lozada heard the report of shots having been fired near his location. The vehicle involved in the incident was described as a red sports car. As Officer Lozada continued driving on Chestnut Street, he glanced in his rearview mirror and saw a red sports car, a red Dodge Stealth, speeding in and out of traffic, in the same direction he was traveling. By the time Officer Lozada stopped at the next red light, the vehicle was directly behind him. Officer Lozada saw four people in the car, but focused his attention on the driver, who was desperately trying to maneuver the vehicle around Officer Lozada's car. Officer Lozada described the driver's facial expression as one that plainly indicated "something was wrong." When the vehicle passed his car, Officer Lozada drove to a nearby relative's house, telephoned the police, and reported his observations.

Officer Lozada went to work later that evening and was informed that the driver of the red sports car was in custody. Officer Lozada looked at the man, Omar Santiago, and confirmed that he was the operator of the red sports car. The red sports car belonged to Maximina Santiago, Santiago's aunt.[2]

Orbe was released from the hospital five days later, having had his spleen removed as a result of the shooting. About two weeks after the incident, Orbe selected the defendant's picture from a photographic array and identified him as the shooter. Orbe had seen the defendant on several prior occasions, but did not know him personally.

Santiago testified pursuant to a written agreement with the district attorney's office in which he promised to testify at the defendant's trial in exchange for consideration on his pending charges related to the same incident. At trial, Santiago admitted

---

[2]The defendant lived with Maximina Santiago and considered her to be his wife.

that he had driven the vehicle from which the defendant had fired the shots at Orbe. Santiago claimed, however, that he had no idea that the defendant intended to shoot Orbe.

The defense was misidentification and alibi. The night before this incident, someone had fired numerous shots into the defendant's home. There was testimony at trial that suggested a fight had taken place at a local barbershop between the defendant's brother, Jose Nieves, and Torres and that the altercation was one of a series of events that had precipitated a round of ammunition being fired into the defendant's home, as well as the shooting of Orbe. In any event, the defendant testified that after the shots were fired into his home, he immediately left Springfield to stay with his brother, Hugo Nieves, in Hartford. Hugo Nieves and Maximina Santiago testified for the defense and corroborated the defendant's alibi.

1. *Omission of malice in jury instruction on armed assault with intent to murder.* The defendant argues that the judge's omission of malice and its definition in her charge to the jury on armed assault with intent to commit murder warrants reversal of his conviction of that crime on three grounds.[3]

a. *Apprendi error.* First, the defendant argues that the judge erred in failing to charge the jury on the element of malice and as a result reversal is required under the principles articulated in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000).[4] According to the defendant, the error permitted the judge to impose an enhanced penalty, to the extent that the defendant was convicted of the

---

[3]The defendant raises no issue on appeal related to the "armed" portion of the indictment or the charge to the jury on that element, and therefore, the discussion focuses on the law pertaining only to assault with intent to murder.

[4]In the *Apprendi* case, the Supreme Court held that a State hate crime statute, which authorized an increase in the maximum prison sentence based on a judge's finding that the defendant acted with the purpose to intimidate because of race, violated the due process clause of the Fourteenth Amendment to the United States Constitution. *Apprendi* v. *New Jersey*, 530 U.S. at 476. See *Commonwealth* v. *Obershaw*, 435 Mass. 794, 809 (2002). The Court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* v. *New Jersey*, 530 U.S. at 490. Here, because the statute under which the defendant was convicted, G. L. c. 265, § 18(*b*), does not provide for an enhanced sentence beyond the statutory maximum, the *Apprendi* case is inapplicable.

greater offense rather than the lesser included offense, without requiring proof of every element.

The defendant argues that the omission of malice from the instruction on armed assault with intent to murder was error. Beginning in 1985, when the Supreme Judicial Court "clarified" the nature of the intent required to prove an assault with intent to murder in *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985), the requisite elements have included assault, specific intent to kill, and malice. See also, e.g., *Commonwealth* v. *Nardone*, 406 Mass. 123, 131 (1989). The *Henson* court explained that malice "in this instance means *only* absence of justification, excuse, and mitigation" (emphasis added).[5] *Commonwealth* v. *Henson*, 394 Mass. at 591.

In 1989, the Supreme Judicial Court in *Commonwealth* v. *Nardone*, 406 Mass. 123 (1989), expounded on the concept of

---

[5]Over the years, appellate courts have grappled with the intent required when "assault with intent" crimes or "attempted" crimes are charged and the underlying offense is murder. See *Commonwealth* v. *Ennis*, 20 Mass. App. Ct. 263, 266-268 (1985), *S.C.*, 398 Mass. 170 (1986). In the past, jurors were fully instructed on what constitutes murder, including those theories that do not require a specific intent to kill, and then asked to decide which crime would have been committed if death had resulted. E.g., *Commonwealth* v. *Demboski*, 283 Mass. 315, 323 (1933); *Commonwealth* v. *Ennis*, 20 Mass. App. Ct. at 266-267.

Recognizing the inherent problems in requiring a jury to make such hypothetical calculations, the court, beginning with *Henson*, held that the requisite intent is far more specific for "assault with intent" crimes than for cases where an actual death has occurred, and further determined that the other prongs of malice associated with a murder or manslaughter offense are not appropriately applied to "assault with intent" crimes. *Commonwealth* v. *Henson*, 394 Mass. at 591. See *Commonwealth* v. *Cowie*, 28 Mass. App. Ct. 742, 745-746 (1990).

As a result, murder, but not assault with intent to murder, may be found where there is intent merely to do grievous bodily harm, *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980); and where there is proof of "knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act." *Commonwealth* v. *McInerney*, 373 Mass. 136, 141 (1977), quoting from *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). Thus, these two prongs of malice, which do not include an intent to kill, are not appropriately included in an instruction defining the elements necessary to prove assault with intent to murder. Rather, malice in the context of assault with intent to murder is limited to the absence of justification, excuse, and mitigation, which can logically coexist with the requirement of a specific intent to kill.

malice as it applies to assault with intent to murder. The court indicated that justification and excuse are both terms in the criminal law that are used to indicate a homicide that, while intentional, is not unlawful.[6] *Id.* at 130. In other words, evidence of justification or excuse could provide an absolute defense to the crime, whereas evidence of mitigating circumstances, defined by the court as including reasonable provocation, sudden combat, or excessive force in self-defense, would merely serve to reduce the charge from assault with intent to murder to the lesser included offense of assault with intent to kill. *Id.* at 130-131.

Because the *Nardone* court concluded that malice in this context constitutes the *absence* of evidence — namely the absence of evidence of justification, excuse, or mitigation — the court held that when "no such evidence is introduced, the prosecution satisfies its burden on the issue of malice by proving specific intent to kill." *Id.* at 132. The court further ruled that "the judge should instruct the jury that the elements of assault with intent to murder are assault and specific intent to kill. He should explain that, if they find specific intent to kill, the requisite finding of malice necessarily exists." *Ibid.*

Here, the trial judge, following *Nardone*, explained the meaning of malice by informing the jury that it must find that the defendant possessed the specific intent to kill; she did not use the term "malice." The judge's instruction mirrored, in all material respects, the model instruction contained in the Massachusetts Superior Court Criminal Practice Jury Instructions § 2.23.1 (MCLE 1st Supp. 2003) on assault with intent to murder where there is no evidence of mitigation.[7] In addition to the defendant's claim that the omission of malice was error, the defendant argues that the court's interpretation in *Nardone* is

---

[6]The court offered the example of a soldier killing in combat or an individual who kills in self-defense. *Commonwealth* v. *Nardone*, 406 Mass. at 130.

[7]The model instructions set forth two distinct instructions that reflect the "mitigation"/"no mitigation" fork in the road set forth in *Nardone*. One instruction is entitled "Assault with Intent to Murder Where There Is No Evidence of Mitigating Circumstances," requiring proof of only an assault and a specific intent to kill. Massachusetts Superior Court Criminal Practice Jury Instructions § 2.23.1 (MCLE 1st Supp. 2003). The instruction omits any reference to the term malice or the absence of mitigating circumstances. *Ibid.*

unsound.[8] The defendant did not object at trial to the instruction he complains of on appeal.

The ruling in *Nardone* is readily reconcilable with the law regarding the appropriate instructions to be given in murder cases. Specifically, *Henson*, and its progeny, made absolutely clear that assault with intent to murder requires proof of a specific intent to kill. This is the same intent necessary to establish murder in the first degree based on a theory of deliberate premeditation, as well as to establish murder in the second degree grounded on the first prong of malice. *Commonwealth* v. *Gaboriault*, 439 Mass. 84, 91-92 (2003). Malice in relation to both of these theories of murder is defined or equated in the decisional law as simply a specific intent to kill. E.g., *Commonwealth* v. *Azar*, 435 Mass. 675, 681-682 (2002); *Commonwealth* v. *Gaboriault*, 439 Mass. at 91. See Massachusetts Superior Court Criminal Practice Jury Instructions, Model Jury Instructions on Homicide §§ 2.3.1, 2.3.2, 2.3.3, 2.4 (MCLE 1st Supp. 2003). The *Nardone* court, implicitly concluding that the same principle applies to a charge of assault with intent to murder, ruled that the judge should instruct the jury "that, if they find specific intent to kill, the requisite finding of malice necessarily exists." *Commonwealth* v. *Nardone*, 406 Mass. at 132.

In the case of either of these theories of murder, however, there is no accompanying requirement to prove the absence of mitigating circumstances as part of the proof of malice. *Commonwealth* v. *Brooks*, 422 Mass. 574, 578 (1996). See Massachusetts Superior Court Criminal Practice Jury Instructions, Model Jury Instructions on Homicide §§ 2.3.1, 2.3.2, 2.3.3, 2.4 (MCLE 1st Supp. 2003). Rather, an instruction regarding mitiga-

---

The second instruction is entitled "Assault with Intent to Murder Where There Is Evidence of Mitigating Circumstances" and includes language that the Commonwealth must prove the absence of mitigating circumstances, without referencing the specific term "malice." Massachusetts Superior Court Criminal Practice Jury Instructions § 2.23.2 (MCLE 1st Supp. 2003).

[8]The focus of this appeal is on the failure to alert the jury to the role of mitigating circumstances in this crime and the defendant's contention that this failure ought to result in conviction on only the lesser included offense of armed assault with intent to kill. The defendant makes no claim that the killing was excused or justified, and therefore, the discussion turns primarily to one directed to mitigating circumstances, specifically, provocation.

tion is only necessary in a murder trial when evidence of mitigation is introduced and the evidence would warrant a conviction on the lesser included offense of voluntary manslaughter — voluntary manslaughter, in this context, constituting an intentional homicide involving mitigating circumstances. *Commonwealth* v. *Walden,* 380 Mass. 724, 726-727 (1980); *Commonwealth* v. *Brooks,* 422 Mass. at 578.

The crime of assault with intent to murder and the lesser included offense of assault with intent to kill contain the same difference that separates murder in the first and second degrees (where a specific intent to kill is required) from voluntary manslaughter — the existence of mitigating circumstances. See, e.g., *Commonwealth* v. *Nardone,* 406 Mass. at 130-131; *Commonwealth* v. *Cowie,* 28 Mass. App. Ct. 742, 745 (1990). In fact, assault with intent to kill has been referred to in the decisional law as an assault with intent to commit manslaughter. *Id.* at 745. The instructions for assault with intent to murder should, therefore, track the instructions for murder (which include the element of a specific intent to kill), neither requiring the additional charge concerning the absence of mitigating circumstances unless and until evidence of mitigation is introduced. Here, where no evidence of justification, excuse, or mitigation was introduced, an instruction on malice was not warranted. There was no error.[9]

Even viewing the evidence in the light most favorable to the defendant, there was nothing in the record to support any one of these theories. The defendant presented a defense based on

---

[9]We disagree with the defendant's contention that the decision in *Commonwealth* v. *Boateng,* 438 Mass. 498, 517 (2003), requires a different interpretation. In *Boateng,* the judge told the jury that assault with the intent to murder requires proof of malice and then defined malice by referring to all three prongs involved in a second degree murder charge. *Ibid.* Not only has that definition of malice been deemed inappropriate in cases where the charge is assault with intent to murder, the instruction omitted the correct definition of malice set forth in *Henson* — the absence of justification, excuse, or mitigation. *Ibid.* The failure was troubling in *Boateng* because it prevented the jury from considering evidence of the defendant's mental illness as mitigation that reduced his crime to assault with intent to kill. *Id.* at 518. The court ruled that the correct definition of malice should be included in the jury instruction on assault with intent to murder. *Ibid.* Here, in contrast, none of the evidence suggested mitigation; therefore, the instruction was properly omitted.

misidentification and alibi; thus, the only live issue at trial was the identity of the gunman. There was no error.

Furthermore, in closing argument trial counsel pressed the point that the Commonwealth had failed to introduce any motive for the defendant to shoot Orbe. Trial counsel emphasized that Orbe was not involved in the barbershop fight and that there was no evidence that Orbe was involved in the incident the previous night at the defendant's home. The lack of a motive, however, runs counter to the theories of justification, excuse, and mitigation, each of which requires some evidence of a motive or a reason for the killing. See generally *Commonwealth* v. *Nardone*, 406 Mass. at 130-131. Therefore, drawing the jury's attention to these concepts would only have undermined the defense theory of the case.

b. *Art. 12 of the Massachusetts Declaration of Rights.* The defendant argues that "[a]rt. 12 should be invoked here because essential fairness to Massachusetts citizens requires a higher standard of protection for an *Apprendi*-type violation than does the federal rule." As there is no *Apprendi*-type error, we need not speculate about the applicability of art. 12.

2. *Ineffective assistance of counsel.* a. *Failure to object to the omission of the instruction on malice.* As discussed, omission of the instruction was not error, therefore, trial counsel cannot be faulted for failing to object.

b. *Failure to object to the prosecutor's impeachment of alibi witness.* The defendant argues that his attorney was ineffective when he failed to object to the prosecutor's impeachment of his alibi witness, Hugo Nieves, with that witness's pretrial silence, without first establishing all four of the foundational factors set forth in *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 295-297 (1981).[10] The defendant argues that the prosecutor did not

---

[10]The following factors must be established prior to impeaching a witness with his or her pre-trial silence: (1) that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information; (2) that the witness had reason to make the information available; (3) that the witness was familiar with the means of reporting it to the proper authorities; and (4) that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so. *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 296-297.

establish the third factor, that Nieves was familiar with the means of reporting his information to Springfield police.

Assuming, without deciding, that trial counsel was ineffective for failing to object to the prosecutor's cross-examination, which the prosecutor, in turn, referenced in his closing argument, the defendant's claim fails because he cannot show that better work would have accomplished something material for the defense. Nieves is the defendant's brother and that blood relationship renders his testimony inherently less credible than the testimony of other witnesses. *Commonwealth* v. *Roberts,* 433 Mass. 45, 51 (2000). Nieves's alibi testimony was echoed by Maximina Santiago (the defendant's girlfriend) and the defendant's own direct testimony.

Despite this testimony, the evidence of guilt was strong. Two witnesses, the victim and the codefendant, Omar Santiago, independently identified the defendant as the shooter. There was also evidence from which it could be inferred, contrary to the defendant's contention at trial, that the defendant did not like Torres because of an ongoing feud between Torres and the defendant's brother. When the defendant spotted Torres's motor vehicle, he had a motive to harm the driver, mistaking him for Torres.

c. *Failure to request honest but mistaken identification instruction.* The defendant's argument that his attorney should have requested an honest but mistaken identification instruction is unavailing. The trial judge, in accordance with defense counsel's request, charged the jury on identification and alibi. The defense was entitled to no more where the challenge by the defense to the identifications was based on the witnesses' veracity, and the evidence did not raise the possibility that they were mistaken. *Commonwealth* v. *Pressley,* 390 Mass. 617, 619-620 (1983).

d. *Failure to request an instruction on the lesser included offense.* Before closing arguments, the trial judge indicated that she would give an instruction on the lesser included offense of armed assault with intent to kill. After closing arguments, however, the trial judge changed her mind and informed counsel that she would not be giving the instruction. The defendant argues that his attorney was ineffective for failing to object to

the change. There was no error. Upon hearing the closing arguments, it undoubtedly became clear to the trial judge that neither party was articulating a claim that remotely suggested the shooting could be justified or excused, or that it was the product of mitigating circumstances. Absent any basis to support a conviction on the lesser included offense, it would have been error for the trial judge to give such an instruction. *Commonwealth* v. *Egerton*, 396 Mass. 499, 503-505 (1986) (if the evidence does not allow a finding of the elements of a lesser included offense, then an instruction on a lesser included offense should not be given). See *Commonwealth* v. *Gould*, 413 Mass. 707, 715 (1992) ("When the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime").

e. *Cumulative error.* Finally, the defendant argues that the accumulated errors of trial counsel deprived him of a fair trial. As we have indicated above, trial counsel did not err. Moreover, we do not see that better work could have accomplished something material for the defense.

*Judgments affirmed.*