COMMONWEALTH *vs.* CRAIG JOHNSTON.

No. 04-P-1207.

Hampden. March 4, 2005. - June 8, 2005.

Present: PERRETTA, GRASSO, & MILLS, JJ.

Further appellate review granted, 445 Mass. 1103 (2005).

*Armed Assault with Intent to Murder. Malice. Mental Impairment. Intoxication. Practice, Criminal,* Instructions to jury.

At the trial of an indictment charging the defendant with assault with intent to murder, no substantial risk of a miscarriage of justice arose from the judge's failure to instruct the jury, sua sponte, that malice is a required element of the crime, where the defendant's case had not proceeded to the jury on theories of intoxication or mental illness as factors in determining the defendant's ability to form a specific intent to cause the victim's death, and where the judge would not have been warranted in instructing the jury on mitigation by reason of mental illness even had the defendant requested such an instruction. [683-689]

INDICTMENT found and returned in the Superior Court Department on January 23, 2003.

The case was tried before *Daniel A. Ford,* J.

*Daniel J. Bennett* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. In this appeal, we examine the considerable complexity arising from decisional law that defines "malice" for the crime of assault with intent to murder differently from "malice" for the crime of murder. A jury found the defendant guilty of armed assault with intent to murder based on an incident that occurred at his wife's workplace on December 17, 2002. On appeal, the defendant maintains that because the jury heard evidence of his fragile emotional state in the week prior to the incident, a substantial risk of a miscarriage of justice arises from the trial judge's failure to instruct, sua sponte, that

"malice" is a required element of the crime.[1] We affirm the defendant's conviction because the evidence was insufficient to require an instruction on malice, which "in this instance means *only* absence of justification, excuse, and mitigation." *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. 667, 671 (2004), quoting from *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985).

1. *Facts*. Viewed in the light most favorable to the defendant, the evidence bearing on mitigation was as follows. The defendant and his wife, Susan, had been married for nearly twenty-seven years and lived together in a home that they owned in Springfield. On the morning of December 11, 2002, the defendant was getting ready for work when individuals arrived at his home, put up a sign that said "auction today," and began to tour the property. Although the defendant's wife knew that the bank had initiated foreclosure proceedings, the defendant was unaware of the depth of the problem. His wife, who controlled the finances, had told him the month before that they were only $800 behind in their mortgage payments. In reality, they were closer to $8,000 in arrears.

That evening, after the defendant had become drunk, he confronted his wife for lying to him about the mortgage, and demanded to know what had become of their money. At some point during the confrontation, the defendant discovered that his wife had purchased a number of expensive new kitchen utensils. He became enraged, attacked her with a pastry brush, and threw beer bottles at the wall.[2] The next morning, the defendant's wife sneaked from the house while the defendant was still asleep. She checked into a Holiday Inn hotel, and she did not return home or see the defendant until the incident at her workplace on December 17.

When the defendant awoke on the morning of December 12, he immediately began to drink. For the next five days, he continued to drink and did not go to work. He attempted to call

---

[1]The defendant does not appeal from his conviction of assault and battery.

[2]Prior to trial, the defendant pleaded guilty to assault and battery, assault with a dangerous weapon (beer bottles), and assault and battery by means of a dangerous weapon (wooden brush and broomstick) in connection with this attack.

his wife at her work several times a day, but she refused to take his calls. The defendant described himself as "upset and depressed over the fact that we were losing the house and that [she] had lied to me."

Other witnesses who saw the defendant that week also described his condition. Thomas Bertrand, the defendant's friend for twenty-two years, visited him for approximately one hour. Bertrand stated that he had never seen the defendant in such a state, and described him as intoxicated, crying, shocked, and "quite a bit depressed." The defendant's stepdaughter-in-law, Cheryl Glidden, and her son, Donald, saw the defendant for approximately fifteen to thirty minutes. Cheryl stated that she had never seen the defendant in such an emotional state; she described him as intoxicated, upset, crying, disheveled, depressed, and agitated. Donald described his grandfather as drunk, very stressed out, very sad, and crying. The defendant's stepson, Todd Glidden, who visited the defendant on two separate occasions, described him as very upset, very emotional, and unable to stop crying. He observed that the defendant drank beer and whiskey from early morning until he went to bed drunk. Thomas Bertrand, Cheryl Glidden, and Todd Glidden all urged the defendant to go to a hospital, but the defendant refused to seek assistance.

On the morning of December 17, the defendant attempted to drink, but his body rejected the alcohol, and he threw up. At that point, the defendant decided to carry out a plan that he had been formulating for "a couple of days." Specifically, he planned to go to the hospital where his wife worked and threaten her with a weapon, so as to cause a "big scandal" that would humiliate her in front of her coworkers, just as she had humiliated him. He hoped to get arrested because he could not stand the thought of "sitting there in his house waiting to get evicted." He believed that if he were incarcerated, his wife would be left to pack up all their possessions and forced to survive on one paycheck instead of two. The defendant decided to bring a knife to the hospital so that people would take him seriously and he would not be thrown out immediately. Because injuries sustained in the altercation with his wife on December 11 had left him unable to grip a knife with his right hand, he secured a knife to his hand with electrical tape.

On arriving at the hospital, the defendant proceeded directly to his wife's cubicle. He approached her from behind, grabbed her by the hair with his left hand and yelled at her.[3] Hospital employees intervened and restrained the defendant, who continued to struggle. When the police arrived, they secured the knife and took the defendant into custody.

2. *Discussion.* At trial, the defendant's defense was not one of intoxication or of mental illness. "He did not suggest or even intimate that, as a result of his drinking, he was incapable of forming the requisite specific intent." *Commonwealth* v. *Fano*, 400 Mass. 296, 306 (1987). The defendant's entire defense was that he intended to humiliate and humble his wife, not kill her. The evidence of the defendant's drinking and emotional condition in the week prior to the attack portrayed the defendant's response to discovering that his home was about to be foreclosed and that his wife was leaving him. It was not offered to suggest that the defendant did not know what he was doing or that he was unable to formulate a specific intent to kill his wife.[4]

At the charge conference, defense counsel agreed with the judge that there was insufficient evidence of intoxication to require an instruction on intoxication as a factor in determining the defendant's ability to form a specific intent to cause his wife's death. See *Commonwealth* v. *Sylvester*, 400 Mass. 334, 336 & n.3 (1987) (where evidence tends to show that defendant was debilitated by alcohol or other drugs at commission of

---

[3]The defendant's wife testified that the defendant held a knife to her throat with his right hand, and said, "This time I'm going to kill you, you mother fucker." A coworker testified that the defendant yelled, "Now I'll kill you, bitch."

The defendant admitted grabbing his wife by the hair and yelling at her, but denied holding the knife to her throat or threatening to kill her.

[4]Despite evidence of the defendant's excessive drinking in the previous five days, there was no evidence that he was intoxicated on December 17. The defendant did not assert that he was unable to think or act because of intoxication. Indeed, he described acting with planning and self-composure as he carried out his assault on his wife. See *Commonwealth* v. *Lapointe*, 55 Mass. App. Ct. 799, 805 (2002). He taped a weapon to his injured hand so that he would be taken seriously, went to her workplace, and made his way directly to her work cubicle. Moreover, both the defendant's wife and her coworker testified that the defendant was not staggering, and the arresting officer who came to the scene noted only a "stale" odor of alcohol on the defendant.

crime, judge must so instruct jury if requested). Nor did counsel request an instruction on the effect of the defendant's mental condition on his ability to form a specific intent.[5] See *Commonwealth* v. *Grey*, 399 Mass. 469, 470-471 (1987) ("Just as we permit evidence of a defendant's alleged intoxication to be considered when his specific intent to kill is in issue [*Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985)], we should permit the jury to consider evidence of mental impairment at the time of the crime in deciding whether the Commonwealth has proved the defendant's specific intent").

The trial judge instructed the jury, without objection, that to prove armed assault with intent to murder, the Commonwealth needed to establish that the defendant (1) was armed with a dangerous weapon; (2) assaulted a person; and (3) "possessed a specific or actual intent to cause the death of the person who was assaulted."[6] The judge also instructed on the lesser included offense of simple assault.

The defendant now argues that the evidence raised a reasonable doubt as to his mental frailty that required the judge to instruct the jury that the Commonwealth had the burden to prove that the defendant was acting with malice, which in this circumstance is the absence of mitigation. See *Commonwealth* v. *Boateng*, 438 Mass. 498, 515, 517 (2003). Stated differently, the defendant argues that the judge erred in not providing an instruction on malice because the jury heard evidence of mitigating circumstances — that he was suffering from depression that rose "to the level of human frailty consistent with mental illness." We discern no error and no substantial risk of a miscarriage of justice.

"[M]alice, as an element of assault with intent to murder, has a very specific meaning. In this context, malice means merely

[5]The defendant's appellate argument focuses not on the effect that alcohol or mental illness might have had on his ability to form the specific intent to cause death, but on whether evidence of his "mental frailty" warranted an instruction that the Commonwealth had the burden to prove malice, defined in this context as the absence of mitigation.

[6]As in *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 670 n.3, the defendant raises no issue regarding the "armed" portion of the indictment, and we confine our discussion to the law relating to assault with intent to murder.

the 'absence of justification, excuse, [or] mitigation.' "[7] *Commonwealth* v. *Nardone*, 406 Mass. 123, 130 (1989), quoting from *Commonwealth* v. *Henson*, 394 Mass. at 591. See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 671 n.5 (malice for "assault with intent to murder is limited to the absence of justification, excuse, and mitigation, which can logically coexist with the requirement of a specific intent to kill"). An instruction on malice is *not* required unless and until evidence of justification, excuse, or mitigation is introduced during trial. *Id.* at 674. See *Commonwealth* v. *Nardone*, 406 Mass. at 132 ("Once evidence of mitigation is introduced . . . malice *becomes* an issue and the judge must instruct the jury accordingly." [emphasis in original]).[8]

As with intoxication, mental illness was not the theory on which the defendant's case proceeded before the jury. See *Commonwealth* v. *Fano*, 400 Mass. at 306 ("theory on which a case is tried below cannot be changed on appeal"). The defendant maintained that his actual plan was to "hurt, humble, and humiliate" his wife, not kill her. Consistent with this theory, he testified that he had thought about his plan for "a couple of

---

[7]As explained in *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 673-674, "malice" for assault with intent to murder differs from "malice" as an element of murder. For murder, malice is defined by reference to three prongs that address the defendant's specific intent or his knowledge of the circumstances. See *Commonwealth* v. *Boateng*, 438 Mass. at 515 (in context of murder, malice requires unexcused specific *intent* to kill, unexcused specific *intent* to inflict grievous bodily harm, or unexcused *intent* to commit reckless act).

By contrast, for assault with intent to murder, malice refers not to the defendant's intent or knowledge but to the absence of justification, excuse, or mitigation. Indeed, specific intent to kill (first prong malice) is a separate element of that crime. See *Commonwealth* v. *Henson*, 394 Mass. at 591 ("There must be *both* malice, which in this instance means only absence of justification, excuse, and mitigation . . . , *and* the specific intent to kill." [emphasis added]).

[8]The instructions for assault with intent to murder parallel those for murder to the extent that neither requires instruction on the Commonwealth's burden to disprove mitigation until the evidence raises a reasonable doubt that the defendant was acting in a transport of passion arising from reasonable provocation, sudden combat, or excessive force in self-defense. See *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 701 (2002) (when evidence raises reasonable doubt as to justification, excuse, or mitigation, Commonwealth must prove that defendant was not acting thereon).

days"; listed his reasons for wanting to humiliate his wife; explained why he hoped to get arrested; and related how the knife was integral to his plan. Far from contending that mental illness affected his actions, the defendant attempted to persuade the jury that he had conceived and carried out a rational plan designed to humiliate, but not kill, his wife. Such an approach had the tactical advantage of removing from the jury's consideration the lesser included offense of armed assault with intent to kill and ensured that simple assault would be the only lesser included offense that the jury could consider. See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 672 (mitigation reduces assault with intent to murder to lesser included offense of assault with intent to kill). Having failed in this attempt, the defendant may not now claim that the trial judge's failure to give an unrequested malice instruction was error. See *Commonwealth* v. *Paton*, 31 Mass. App. Ct. 460, 465-466 (1991).

Moreover, the trial judge would not have been warranted in instructing the jury on mitigation by reason of mental illness even had the defendant requested such an instruction. A judge must instruct on the Commonwealth's burden to prove malice (the absence of mitigation) only if the evidence raises a reasonable doubt as to whether mitigating circumstances exist. See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 674. See also *Commonwealth* v. *Egerton*, 396 Mass. 499, 503-505 (1986) (if evidence does not permit finding lesser included offense, instruction on lesser included offense should not be given); *Commonwealth* v. *Nardone*, 406 Mass. at 131-132.[9]

Relying on *Commonwealth* v. *Boateng*, 438 Mass. at 517-518, the defendant asserts that the testimony regarding his mental condition in the days leading up to December 17 raised a reasonable doubt that his actions were the type of "frailty due

---

[9]Compare *Commonwealth* v. *Gould*, 413 Mass. 707, 715 (1992) (when evidence permits finding of lesser included offense, on request, judge must instruct jury on possibility of conviction of lesser crime); *Commonwealth* v. *Woodward*, 427 Mass. 659, 662-663 (1998) (when evidence permits finding of lesser included offense, on request, judge must instruct on lesser included offense, even over objection of defendant); *Commonwealth* v. *Berry*, 431 Mass. 326, 338 (2000) (when evidence warrants conviction of lesser included offense and element differentiating offenses is in dispute, judge may give instruction despite objection by both parties).

to mental illness" that can mitigate malice. In the defendant's view, *Boateng* holds that mental illness bears *not only* on the defendant's ability to form a specific intent, *but also* on mitigation and the Commonwealth's burden to prove "malice." In consequence, once the evidence raises a reasonable doubt that the defendant's acts were the product of mental illness, then the Commonwealth must prove that the defendant's acts were not mitigated by the human frailty of mental illness. Absent such proof, assault with intent to murder would be reduced to its lesser included offense of assault with intent to kill. See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. at 674 (assault with intent to kill referred to in decisional law as assault with intent to commit manslaughter).

We reject this contention for two reasons. First, we disagree that *Boateng* establishes mental illness as a mitigating circumstance akin to heat of passion based on a reasonable provocation, sudden combat, or excessive force in self-defense so as to require proof of "malice." Further, the facts here are far removed from the long-standing mental illness present in *Boateng*.

Prior to *Boateng*, our jurisprudence treated evidence of a defendant's intoxication or mental condition as bearing only on whether a defendant had the capacity to form the requisite specific intent. Where evidence of intoxication or mental illness is present, we permit the jury to consider such evidence as a factor bearing on specific intent, but not as an element of the offense to be disproved. See, e.g., *Commonwealth* v. *Beattie*, 409 Mass. 458, 459 (1991); *Commonwealth* v. *Sleeper*, 435 Mass. 581, 597-598 (2002); *Commonwealth* v. *LaCava*, 438 Mass. 708, 717 (2003). Mitigation, on the other hand, has long been understood to embody circumstances where a defendant's actions arising from the frailty of human nature, such as occur in a heat of passion induced by reasonable provocation, sudden combat, or excessive force in self-defense, reduce murder to voluntary manslaughter. See, e.g., *Commonwealth* v. *Nardone*, 406 Mass. at 130-131. Nowhere in our decisional law has mental illness (or intoxication) ever been considered a "frailty of human nature" or a "mitigating factor" analogous to reasonable provocation, sudden combat, or excessive force in self-defense.

Mental illness and intoxication have bearing only on a defendant's ability to form the requisite specific intent (for first and second prong malice) or the state of the defendant's knowledge (for third prong malice). " '[T]here is no "diminished capacity" defense in this Commonwealth.' *Commonwealth* v. *Parker*, 420 Mass. 242, 245 n.3 (1995). We do recognize evidence of a defendant's mental impairment as relevant to the question 'whether the crime of murder was committed at all,' *Commonwealth* v. *Grey*, 399 Mass. 469, 470 (1987), including the issues of intent and knowledge, *Commonwealth* v. *Sires*, 413 Mass. 292, 299 (1992)." *Commonwealth* v. *Baldwin*, 426 Mass. 105, 106 n.1 (1997), cert. denied, 525 U.S. 820 (1998).

We do not believe that *Boateng* intended to merge the separate and logically unrelated lines of decisional law regarding the effect of alcohol or mental illness on a defendant's ability to form a specific intent with those involving mitigation, which "embodies a . . . category of circumstances in which 'the killing arose from the frailty of human nature, as in instances of sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense.' " *Commonwealth* v. *Boateng*, 438 Mass. at 517, quoting from *Commonwealth* v. *Nardone*, 406 Mass. at 130-131. The former deals with alcohol or mental illness as factors bearing on a defendant's intention and knowledge; the latter deals with circumstances of the human condition in which a defendant's unlawful actions are understood, though not sanctioned.

We acknowledge that, read literally, *Boateng* suggests that mental illness is such a frailty of human nature.[10] In our view, however, the result in that case is attributable to its unique circumstances rather than to the Supreme Judicial Court's determination to expand exponentially our mitigation jurisprudence. We believe that had the court intended such a sea change it would have explained in depth its reasons for doing so. Nor does *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 63 n.11 (2001), cited as authority in *Boateng*, support the

---

[10] "We have not previously held whether frailty due to mental illness can be a mitigating factor that would vitiate malice and reduce an assault with intent to murder to an assault with intent to kill. But we think that common sense suggests that it can be." *Commonwealth* v. *Boateng*, 438 Mass. at 517.

conclusion that mental illness constitutes a "mitigation" that reduces assault with intent to murder to assault with intent to kill. Indeed, *Murray* involved a prosecution for attempted murder under G. L. c. 265, § 16 ("by any means *not* constituting an assault with intent to commit murder" [emphasis supplied]). *Commonwealth* v. *Murray*, 51 Mass. App. Ct. at 60 n.6.

Even if we are incorrect in our interpretation of *Boateng*, the instant facts are far removed from the long-standing mental illness present there. In *Boateng*, the defendant's primary theory at trial was insanity. He had been diagnosed as suffering from mild depression, major depression, and major depression with psychotic features and schizoaffective disorder; had taken antidepressant and antipsychotic drugs with varying effects on his mood and thought processes; and was likely in the grip of psychosis, feeling under the control of a spirit, and hearing voices on the day of the alleged crime. *Commonwealth* v. *Boateng*, 438 Mass. at 501-502.

Here, by contrast, the evidence did not raise a reasonable doubt that the defendant was suffering from a mental illness or that this conduct was due to a mental illness. To be sure, testimony from the defendant's family and friends painted a picture of intoxication and emotional instability in the five days prior to December 17. However, such evidence falls far short of raising a reasonable doubt that the defendant suffered from the type of clinical and psychotic condition considered in *Boateng*.

In sum, there is no error and no substantial risk of a miscarriage of justice.

*Judgment affirmed.*