COMMONWEALTH *vs.* JOSEPH N. NARDONE, JR.

Middlesex. September 11, 1989. - November 20, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Assistance of counsel, Double jeopardy. *Evidence,* Relevancy and materiality, Motive. *Assault with Intent to Kill. Assault with Intent to Murder. Malice. Practice, Criminal,* Lesser-included offense.

At a criminal trial, defense counsel's decision not to call as a witness a ballistics expert, as he promised in his opening argument at the beginning of the lengthy trial, did not constitute ineffective assistance of counsel, where the expert, during the trial, indicated he could no longer support the defense theory of the case and where a substitute expert's testimony would not have further aided the defense. [125-128]

At the trial of criminal charges, including assault with intent to murder, evidence that the victim, the defendant's wife, had stayed at a shelter to escape family violence was admissible as showing a hostile relationship between the defendant and the victim, relevant to the issue of the defendant's motive [128]; and other evidence of family stress and discord, even if improperly admitted, was only cumulative of properly admitted evidence, some of which the defense introduced [129].

Evidence at a criminal trial was sufficient to support guilty verdicts. [129-130]

At the trial of an indictment for assault with intent to murder, in which there was no evidence to permit a finding of mitigation, it was error requiring reversal for the judge to instruct the jury, over the defendant's objection, on the lesser-included offense of assault with intent to kill. [130-132]

Where a defendant's conviction of assault with intent to kill did not logically imply acquittal on the greater offense of assault with intent to murder for which he was tried, and where the defendant raised on appeal the issue of the judge's erroneous instruction which had resulted in his conviction of the lesser offense, retrial for the main offense was not barred by Federal constitutional principles of double jeopardy. [132-134]

INDICTMENTS found and returned in the Superior Court Department on July 16, 1986.

The cases were tried before *Paul A. Chernoff*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Chrystal Murray*, Committee for Public Counsel Services, for the defendant.

*Kathy S. Rabin*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant has appealed from his convictions of assault with intent to kill, assault and battery by means of a dangerous weapon, and unlawful possession of a firearm. We transferred the case to this court on our own motion. The defendant was indicted on a charge of assault with intent to murder (G. L. c. 265, § 18), but convicted of the lesser-included offense of assault with intent to kill (G. L. c. 265, § 29). The charges against the defendant arose from an ultimately fatal gunshot wound suffered by the defendant's wife, Maureen Nardone, on May 23, 1986.[1] On that day, police and fire department personnel, responding to an emergency call, arrived at the Nardones' home in Cambridge. The defendant led them to an upstairs bedroom, where they found the victim lying unconscious on a bed with a single gunshot wound in her head and a small pistol in her hand.

The defendant told the police that his wife had attempted suicide. At least two aspects of the shooting, however, were inconsistent with a suicide attempt. First, the appearance of the victim's wound and lack of gun powder residue on the victim suggested that she had been shot from a distance. In addition, the condition of the gun indicated that it had been handled by someone other than the victim.[2] Furthermore, the

---

[1] The defendant was charged with assault with intent to murder, rather than murder, because Maureen Nardone remained alive at the time of the defendant's indictment. She died six months after the defendant's 1987 trial.

[2] The State police ballistician at the scene, upon examining the .25 caliber semi-automatic pistol taken from the victim's hand, found several as-

defendant was the only person present in the house with the victim other than the defendant's bedridden father, and several witnesses testified that, while being led away from the house after his arrest, the defendant shouted, "I shot her."

The defendant argues that his three convictions should be set aside because: (1) he was deprived of the effective assistance of counsel when defense counsel told the jury that he would produce a ballistics expert to testify in support of the defendant's version of the facts but later failed to do so; (2) the judge erroneously admitted both "bad acts" character evidence and irrelevant evidence; and (3) there was insufficient evidence as a matter of law to support the convictions.

In addition, the defendant argues that his conviction of assault with intent to kill should be set aside because it was error for the judge to instruct the jury on this lesser-included offense of assault with intent to murder.

We reject the defendant's first three arguments and therefore affirm his convictions for assault and battery by means of a dangerous weapon, and unlawful possession of a firearm. As to the defendant's fourth argument, we agree that it was error for the judge to instruct the jurors that they could find the defendant guilty of assault with intent to kill as a lesser-included offense of assault with intent to murder. We therefore reverse the conviction for assault with intent to kill, and remand the case for further proceedings consistent with this opinion.

1. *Ineffective assistance of counsel.* The defense proceeded on the theory that Maureen Nardone had attempted suicide. Therefore, a significant issue was whether the victim's wound could possibly have been inflicted at close range by the victim herself. Experts called by the Commonwealth testified

---

pects of its condition unusual. The ballistician observed first that the blood-stained casing of a discharged cartridge was the topmost cartridge in the gun's clip. In addition, the pistol's hammer was in the down position and its firing chamber empty, despite the pistol's automatic reload and cock features. Based on these observations, the ballistician immediately concluded that after the gun was fired, there was some "human intervention."

that gunpowder residue, called "stippling," is normally detectable in and around close range gunshot wounds, and that wounds inflicted at point-blank range are normally characterized by a jagged-edged appearance, called "starring."

Defense counsel in his opening statement announced that a defense ballistics expert would testify that Maureen Nardone could have fired the gun. On the fifteenth day of trial, however, defense counsel informed the court that his retained ballistics expert had become "very uncomfortable" with his planned testimony. After contacting several experts, defense counsel did locate another ballistics expert. But following voir dire questioning of this proposed substitute, defense counsel reported to the court that he had made a "strategic decision" not to call a ballistics expert. The defendant now claims that this decision, coupled with defense counsel's earlier statement to the jury that he would produce a ballistics expert, amounted to ineffective assistance of counsel.

The standard for measuring the effectiveness of counsel under Massachusetts law is "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and, if so, "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Accordingly, a defense counsel's strategic decisions at trial do not amount to ineffective assistance of counsel unless they are "manifestly unreasonable." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). Likewise under the Federal Sixth Amendment, ineffective assistance of counsel exists only where there is both a deficient performance by counsel and the likelihood of serious resulting prejudice to the defendant. *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtu-

ally unchallengeable." *Id.* at 690. The defendant's claim of ineffective assistance fails under both of these standards.[3]

Nothing in the record suggests that defense counsel's reference to ballistics testimony in his opening statement reflected inadequate preparation, incompetency, or inattention. Rather, it is demonstrated that counsel retained a well-qualified expert before trial, arranged for him to view and test the relevant evidence, and had a reasonable expectation that his testimony would aid the defense.

Moreover, defense counsel was able to advance the defense theory of suicide through skillful cross-examination of the Commonwealth's experts. He successfully elicited testimony enabling him to argue that (1) gun powder residue initially present on the victim's head may have remained undetected, (2) the absence of stippling is not necessarily inconsistent with a self-inflicted wound, and (3) the evidence was consistent with a shot fired through a pillow or blanket.

Finally, counsel's failure to call a ballistics expert, as promised, was clearly a decision forced upon him by events over which he had no control. Well into the trial, when counsel learned that the retained ballistics expert was no longer willing to support the defense theory, counsel contacted a substitute expert, briefed him on the case, and arranged for him to appear before the court for voir dire. It was only when it became apparent that the substitute testimony would not appreciably advance the defendant's theory of the case beyond what counsel had already established through cross-examination of the Commonwealth's experts that counsel finally decided not to call a ballistics expert at all. In the circumstances the failure to call a ballistics witness, as promised, was not ineffective assistance of counsel.

The defendant's reliance on *Anderson* v. *Butler*, 858 F.2d 16 (1st Cir. 1988),[4] is misplaced. In *Anderson*, defense coun-

---

[3]We have stated that, if ineffective assistance is present under the Massachusetts standard, it is necessarily also present under the Federal standard. See *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

[4]See *Commonwealth* v. *Anderson*, 398 Mass. 838 (1986).

sel made his opening statement at the conclusion of the prosecution's case, promising expert witnesses, merely one day before he rested without doing so. As the United States Court of Appeals for the First Circuit emphasized, *id.* at 18, this rapid sequence made defense counsel's failure to produce the witnesses quite dramatic. Here, by contrast, defense counsel's promise to produce a ballistics expert occurred at the commencement of trial on March 17, 1987, and may well have been forgotten by the jurors by the time the defense finally rested on April 13, 1987, twenty-seven days later. In addition, the originally retained expert in this case changed his opinion after the trial had commenced, thus forcing defense counsel to confront a dilemma not present in *Anderson.* Here, sticking to the original plan was not a realistic option.

2. *The evidentiary claim.* The defendant objects to the admission of evidence of the victim's 1984 stay at Dove House, a shelter for battered women.[5] He argues here that the evidence was inadmissible bad character evidence and too remote in time. We have stated, however, that "[e]vidence of a hostile relationship between a defendant and his spouse may be admitted as relevant to the defendant's motive to kill the victim spouse." *Commonwealth* v. *Gil*, 393 Mass. 204, 215 (1984). See *Commonwealth* v. *Borodine*, 371 Mass. 1, 8 (1976), cert. denied, 429 U.S. 1049 (1977). The evidence was admissible for this purpose, even if it tended to show prior bad acts on the part of the defendant. *Commonwealth* v. *Martin*, 357 Mass. 190, 192 (1970).

Moreover, the question of remoteness was a matter within the discretion of the trial judge. See *Commonwealth* v. *Todd*, 394 Mass. 791, 798 (1985); *Commonwealth* v. *Gil, supra* at 215.

---

[5]It is worth noting that in order to limit the prejudicial effect of this evidence, the judge prohibited the prosecutor from characterizing Dove House as a shelter "for battered women" in front of the jury. The judge permitted the Commonwealth to elicit testimony that the victim went to Dove House to escape family violence, but he ruled that the label "shelter for battered women" was "loaded."

The defendant also argues that evidence of stress and turmoil within the Nardone household, evidence of the defendant's Vietnam experience and multiple medical problems, evidence of the defendant's gun collection, and evidence of marital discord between the Nardones was improperly admitted.

Not only did the defense fail to pursue objections to this evidence, but, in an apparent effort to establish the victim's motive for suicide, defense counsel himself introduced extensive evidence of discord and stress within the Nardone family. Much of the evidence about which the defendant now complains supported the defense theory of the case and may have been instrumental in the jury's decision to convict him of a lesser-included offense.

Even if some of this evidence should not have been admitted, its admission could not have resulted in a reasonable likelihood of a miscarriage of justice because it was cumulative of other properly admitted evidence, some of which the defense introduced. *Commonwealth* v. *Freeman,* 352 Mass. 556 (1967).

3. *The sufficiency of the evidence.* The defendant claims that he is entitled to a reversal of the judge's denial of his motion for required findings of not guilty.

In determining the sufficiency of the evidence to support a guilty verdict, "[the] question is whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Jackson* v. *Virginia,* 443 U.S. 307, 319 (1979). See *Commonwealth* v. *Mandile,* 403 Mass. 93, 94 (1988). Moreover, it is not improper for a conviction to be based entirely on circumstantial evidence. *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 54 (1975). Taken in the light most favorable to the Commonwealth, there was evidence that negated suicide; that the defendant had motive and opportunity (and no one else did); that his conduct after the shooting indicated consciousness of guilt; and that the defendant admitted the shooting at the scene. The defendant's arguments are in real-

ity directed toward the weight and credibility of the evidence, a matter wholly within the province of the jury. *Commonwealth* v. *Montecalvo*, *supra* at 54.

4. *Assault with intent to kill.* Over defense counsel's objection, the judge instructed the jurors that they could find the defendant guilty of assault with intent to kill as a lesser-included offense of assault with intent to murder. The defendant claims that this instruction constituted reversible error because there was no evidence permitting the jury to find mitigation of an unlawful homicide. We agree.

The error in this case can be traced to the unusual nature of the element differentiating assault with intent to murder, G. L. c. 265, § 15, and assault with intent to kill, G. L. c. 265, § 29. One can correctly state that this element is malice. See *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985) ("[A]ssault with intent to kill is a lesser included crime within the crime of assault with intent to murder . . . The difference is that in the lesser crime there need be no proof of malice . . ." [citations omitted]). The point that has engendered considerable confusion, however, is the meaning of malice in this context.

We have stated that malice, as an element of assault with intent to murder, has a very specific meaning. In this context, malice means merely the "absence of justification, excuse, [or] mitigation." *Id.* at 591.

To clarify this definition, we note that the terms "justification" and "excuse" have been used synonymously in criminal law to indicate the instances where homicide, although intentional, is not unlawful. See *Commonwealth* v. *Ennis*, 20 Mass. App. Ct. 263, 268 n.7 (1985), *S.C.*, 398 Mass. 170 (1986). Examples illustrating this concept include the acts of a soldier in wartime and one who kills reasonably in self-defense. *Id.*

The term "mitigation," on the other hand, refers to the class of cases where the homicide remains unlawful even though the killing arose from the frailty of human nature, as in instances of sudden passion induced by reasonable provo-

cation, sudden combat, or excessive force in self-defense. See *id.* J.R. Nolan, Criminal Law § 203 (2d ed. 1988).

Accordingly, given that justification and excuse render a homicide noncriminal, malice, as the element differentiating assault with intent to murder from assault with intent to kill, can mean only the absence of mitigation, i.e., the absence of reasonable provocation, sudden combat, or excessive force in self-defense. Accord *Commonwealth* v. *Henson, supra* at 591 (likening the criminal intent required for conviction of assault with intent to kill to the criminal intent required for conviction on voluntary manslaughter).

The judge reached this inevitable conclusion in his instruction to the jury on the crime of assault with intent to kill. He correctly explained the concept by charging that: "[Y]ou would be warranted in finding the existence of mitigating circumstances [and thus convicting on the lesser offense] if you conclude that the defendant acted from a sudden transport of passion or heat of blood upon a reasonable provocation or upon sudden combat. There must be evidence that something happened which would have been likely to produce in an ordinary person such a nervous state of passion, anger, fear, fright or nervous excitement as would eclipse his capacity for reflection or restraint and that what happened actually did produce [such] a state of mind in the defendant."

As this instruction illustrates, perhaps the simplest and most succinct way to describe the difference between assault with intent to murder and assault with intent to kill is to state that the lesser offense has one *more* component part than the main offense. Assault with intent to kill consists of assault, specific intent to kill, *and* the mitigating factor of heat of passion induced by sudden combat or reasonable provocation. Assault with intent to murder consists of assault, specific intent to kill, and absence of mitigation. See *Commonwealth* v. *Alfonso*, 19 Mass. App. Ct. 599, 602 n.3 (1985).

Where sufficient evidence has been introduced to permit a finding of sudden combat or reasonable provocation, the Commonwealth bears the burden of proving an absence of

mitigation beyond a reasonable doubt. Once evidence of mitigation is introduced, therefore, malice *becomes* an issue and the judge must instruct the jury accordingly. But if no such evidence is introduced, the prosecution satisfies its burden on the issue of malice by proving specific intent to kill. Under such circumstances, the judge should instruct the jury that the elements of assault with intent to murder are assault and specific intent to kill. He should explain that, if they find specific intent to kill, the requisite finding of malice necessarily exists.

In this case, defense counsel objected to the jury instruction on assault with intent to kill, accurately pointing out that there had been no evidence from which a rational juror could conclude that the defendant had shot his wife in reaction to a sudden attack by her or because of passion induced by reasonable provocation. This court has frequently ruled that a judge should not instruct a jury on a lesser-included offense not suggested by a reasonable view of the evidence. *Commonwealth* v. *Walden*, 380 Mass. 724, 726-729 (1980). See *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973). Accordingly, we reverse, and set aside the defendant's conviction of assault with intent to kill.

5. *Double jeopardy.* On appeal, the defendant argues that the protection against double jeopardy afforded by the Fifth Amendment to the United States Constitution prevents his retrial on the original charge of assault with intent to murder.[6] We reject this argument and remand for a new trial.

Normally, the law treats a jury's decision to convict a defendant on a lesser-included offense as an implied acquittal on the offense charged. *Green* v. *United States*, 355 U.S. 184, 190 (1957). Thus, even though retrial of a defendant whose conviction is reversed is not barred, see J.R. Nolan, Criminal Law, *supra* at § 692, a defendant convicted of a lesser-included offense normally cannot be retried on the

[6]The defendant does not rely on the protection against double jeopardy afforded by G. L. c. 263, § 7. We therefore do not consider that statute.

greater offense initially charged. *Commonwealth* v. *Burke*,
342 Mass. 144 (1961).

However, given the relationship between the crimes of as-
sault with intent to murder and assault with intent to kill,
conviction on the latter does not logically imply acquittal on
the former. As is explained above, assault with intent to kill
consists of assault with intent to murder, plus facts permit-
ting a finding of mitigation. Therefore, the jury in this case
must have found both an assault and specific intent to kill,
the only elements of assault with intent to murder required
for conviction under the present circumstances. Where a de-
fendant attacks the very error that resulted in his conviction
on the lesser offense rather than the main offense, we hold
that retrial on the main offense is not barred. In this respect,
this case is the same as the situation in which a conviction is
reversed because of an improper jury instruction on the ele-
ments of an offense but retrial on that offense is nevertheless
permitted.

The holding of the United States Supreme Court in *Green*
v. *United States*, 355 U.S. 184 (1957), is not to the contrary.
In *Green*, where the defendant had been charged with first
degree murder and convicted of second degree murder (with
the jury remaining silent on first degree murder), the Court
held that retrial for first degree murder was barred by double
jeopardy. This ruling was based in part, however, on the ra-
tionale that a conviction on a lesser offense necessarily im-
plies acquittal on the main offense charged. *Id.* at 190. For
the reasons stated above, we find this reasoning inapplicable
on the present facts.

Moreover, cases subsequent to *Green* establish that failure
by a jury to return a verdict on an offense charged does not
invariably bar retrial for that offense. In *Cichos* v. *Indiana*,
385 U.S. 76 (1966), the defendant had been charged with
both involuntary manslaughter and reckless homicide, two
offenses having substantially the same elements but substan-
tially differing penalties under Indiana law. *Id.* at 78. The
defendant was initially convicted of the less serious offense of
reckless homicide (with the jury remaining silent on involun-

tary manslaughter), but his conviction was reversed on appeal and the prosecution retried him on both of the original charges. On these facts, the Court agreed with the Indiana Supreme Court that the defendant's retrial had not been barred by double jeopardy because "a verdict of guilty of reckless homicide [did] not logically exclude the possibility of such a verdict on the charge of involuntary manslaughter." *Id.* at 80, quoting *Cichos* v. *State*, 246 Ind. 680, 686 (1965).[7] See *United States ex rel. Jackson* v. *Follette*, 462 F.2d 1041 (2d Cir.), cert. denied, 409 U.S. 1045 (1972); W.R. LaFave & J.H. Israel, Criminal Procedure § 24.4 (1984) (stating that the *Green* rule is not applicable in all instances in which a jury does not return a verdict on some count).

With respect to the defendant's conviction for assault with intent to kill, the judgment is reversed, the verdict is set aside, and the case is remanded for a new trial. With respect to his convictions for assault and battery with a dangerous weapon and unlawful possession of a firearm, the judgments are affirmed.

*So ordered.*

---

[7]Technically, the result in *Cichos* was the dismissal of the writ of certiorari as improvidently granted. Apparently, the Court granted certiorari to consider whether the double jeopardy clause should be incorporated through the Fourteenth Amendment against the States. Since the Court concluded that retrial did not violate *Green*, the case did not raise the issue of incorporation of the double jeopardy clause.