COMMONWEALTH *vs.* ALONZO DEDRICK.

No. 91-P-757.

Suffolk. March 11, 1992. - August 7, 1992.

Present: WARNER, C.J., DREBEN, & GREENBERG, JJ.

*Assault with Intent to Kill. Assault with Intent to Murder. Malice. Self-Defense. Robbery.*

At the trial of an indictment for armed assault with intent to murder, no substantial risk of a miscarriage of justice was created by the judge's failure to instruct the jury on assault with intent to kill as a lesser included offense, based on the use of excessive force in self-defense as a mitigating factor negating malice, where the evidence did not raise a reasonable doubt as to whether the defendant acted in self-defense in shooting the victim, a police officer. [164-166]

A defendant who took a handgun from a State police officer was properly convicted of armed robbery where, although he was not armed when he took the gun, he used it immediately thereafter in an effort to escape apprehension and complete the theft. [166-167]

INDICTMENTS found and returned in the Superior Court Department on July 21, 1988.

The cases were tried before *Robert A. Mulligan,* J.

*James L. Sultan* for the defendant.

*Paula J. DeGiacomo,* Assistant Attorney General, for the Commonwealth.

WARNER, C.J. We state the facts essential to this appeal which the jury could have found beyond a reasonable doubt. At about 9:00 P.M. on the evening of July 13, 1988, Massachusetts State police Troopers Carol Harding and Michael Grassia were working undercover with other troopers as part of a narcotics investigation. Grassia was posing as the buyer of a brick of heroin. Harding was a member of the surveillance and backup team. She was alone in an unmarked automobile parked one vehicle behind Grassia's automobile.

The defendant approached the driver's side of Harding's automobile. He asked her, "Are you looking for something?" and she said, "I'm all set." The defendant then walked behind Harding's automobile and a minute or two later entered it from the passenger's side. The defendant said to her, "I've got some coke right here," closed the door, and immediately reached for her waist pack, belted around her waist, and tried to pull it off. The pack contained personal items, her State police identification and her beeper. When the pack did not release, the defendant grabbed Harding by the shirt and punched her in the face. She identified herself as a State police officer and he continued to punch her in the face, and on her body, at the same time pulling at the waist pack. While trying to fend off the defendant's blows with her right hand, Harding had her left hand on her loaded handgun, which was underneath her left leg. The defendant twisted her upper body and pulled her across the seat towards him. He kept punching Harding in the face, and, in response to her continuing to identify herself as a police officer, he kept saying, "Do you know who I am, you fucking bitch?" The defendant reached around Harding's body and pulled the gun up in between them. During the fight for control of the weapon, the defendant twisted Harding's wrist and forced the barrel of the gun into her chest. Her index finger was in the trigger hole, and the defendant was trying to take her hands off the gun; he was pushing his finger in the trigger hole and trying to push her finger out, still calling her a "fucking bitch." As the struggle continued, Harding managed to push the barrel of the gun away from her chest. She opened the driver's side door to the automobile, and she and the defendant fell out onto the street head first. As the fight for the gun continued outside the car, the gun slipped from both of them and slid to the street. The defendant reached the gun first, picked it up, and attempted to flee.

Harding, about ten feet behind, chased him, screaming several times for Grassia to help her. She tackled the defendant from the top of a guardrail. The defendant then stood up within five feet of Harding and, using the gun taken from

her, shot at her twice while she was on the ground. She was hit by a bullet entering the inner thigh of her right leg and leaving on the other side. A piece of flesh was also taken out of her left leg. As she was being shot, Grassia, now in pursuit after having heard and seen Harding, said, "Stop, State Police," "Halt, State Police," or, "State Police. Drop it." Harding resumed the chase, and again Grassia yelled, "State Police. Halt," to no avail. Grassia shot at the defendant once, and, as Harding tackled the defendant a second time, she was shot in the lower back by a second bullet from Grassia's handgun. From where she lay, Harding heard Grassia saying, "What are you doing? What are you doing? State Police." During the ensuing chase, the defendant shot Grassia twice, once in the left shoulder and once, from about three feet away, in the left side of his chest, about two inches from his heart and one inch from major arterial blood vessels.[1] Grassia had fired all six bullets in his gun. The defendant was hit once in the neck and had a superficial wound to his right shoulder; the injuries were not serious.

Despite his wounds, Grassia, aided by Troopers Raymond Auld and Paula Loud, subdued the defendant. During the struggle with Grassia, the defendant said, "Man, what the fuck you doing? I'm a Boston cop. I'm fucking DCU" (Drug Control Unit). While saying "I'm DCU," the defendant turned Harding's gun toward Grassia's head. When Auld took the defendant from Grassia, the defendant said that Auld had the wrong person, as the defendant worked at a nearby Mobil gasoline station and was chasing the assailant and trying to help the police. The defendant had never been employed by the Boston police or the Mobil station.

At the scene, the defendant told an emergency medical technician: "I fucked up, just let me die." He repeated this eight or ten times in the ambulance on the way to the hospital.

---

[1] The defendant fired at Grassia three times. (The gun taken from Harding had been loaded with five shots.) The evidence was inconclusive whether a wound to Grassia's right forearm was inflicted by a separate bullet.

After a jury trial in the Superior Court, the defendant was convicted of armed assault with intent to murder and assault and battery with a dangerous weapon on Trooper Grassia, assault and battery with a dangerous weapon and armed robbery on Trooper Harding and unlawfully carrying a firearm. He was acquitted of assault and battery and armed assault with intent to murder on Trooper Harding. On appeal, the defendant claims error in (1) the failure of the judge to instruct the jury on assault with intent to kill Grassia as a lesser included offense of assault with intent to murder and the usurpation by the judge of the jury's fact-finding role with respect to the element of malice, and (2) the denial of his motion for a required finding of not guilty on the charge of armed robbery on Trooper Harding. We affirm.

1. *Assault with intent to kill and the element of malice.* The defendant did not request an instruction on assault with intent to kill as a lesser included offense of assault with intent to murder Trooper Grassia, and so we review to see if there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Campbell*, 394 Mass. 77, 87 (1985).

" 'The difference [between the crimes] is that in the lesser crime there need be no proof of malice . . . .' In this context, malice means merely 'the absence of justification, excuse [or] mitigation.' . . . [P]erhaps the simplest and most succinct way to describe the difference between assault with intent to murder and assault with intent to kill is to state that the lesser offense has one *more* component part than the main offense. Assault with intent to kill consists of assault, specific intent to kill, and [a] mitigating factor. . . . The term 'mitigation' . . . refers to the class of cases where the homicide remains unlawful even though the killing arose from the frailty of human nature, as in instances of sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense" (citations omitted). *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-131 (1989), quoting in part from *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). See *Commonwealth* v. *Carrion*, 407 Mass. 263, 267 (1990). If there is no evidence of mitigation, the

prosecution satisfies its burden on the issue of malice for assault with intent to murder by proving assault and specific intent to kill. *Commonwealth* v. *Nardone, supra* at 131-132.

In his original charge to the jury, the judge, in defining the absence of malice, gave as an example of justification (that is, not unlawful) a situation in which one acts reasonably in self-defense. See *Commonwealth* v. *Nardone, supra* at 130. He described mitigation as including those circumstances in which one acts "from the frailty of human nature as in instances of great provocation or sudden combat." In two supplementary instructions, the judge told the jury that self-defense had not been submitted to them and that it was not an aspect of the case. On appeal, the defendant argues that the judge should have explicitly instructed on assault with intent to kill because the question of the defendant's use of *excessive force in self-defense* as a mitigating factor negating malice was one for the jury.

The short answer to the defendant's contention is that "[t]he evidence did not raise a reasonable doubt as to whether the defendant acted in self-defense. Therefore, an instruction on [assault with intent to kill] based on the use of excessive force in self-defense was not required." *Commonwealth* v. *Carrion, supra* at 268.[2] There was no error, much less a substantial risk of a miscarriage of justice. "The right of self-defense ordinarily *cannot be claimed by a person who provokes or initiates an assault unless* that person withdraws in good faith from the conflict and *announces his intention to retire.* Annot., Withdrawal, After Provocation of Conflict, as Reviving Right of Self-Defense, 55 A.L.R.3d 1000, 1003 (1974)" (emphasis in original). *Commonwealth* v. *Naylor,*

---

[2]Indeed, the judge gave the defendant more than that to which he was entitled when he referred to great provocation or sudden combat as mitigating factors. No evidence was introduced which would permit a finding of either. See *Commonwealth* v. *Ennis,* 20 Mass. App. Ct. 263, 268 (1985), *S.C.,* 398 Mass. 170 (1986). "Under such circumstances, the judge should instruct the jury that the elements of intent to murder are assault and specific intent to kill. He should explain that, if they find specific intent to kill, the requisite finding of malice necessarily exists." *Commonwealth* v. *Nardone, supra* at 132.

407 Mass. 333, 335 (1990), quoting from *Commonwealth* v. *Maguire*, 375 Mass. 768, 772-773 (1978). See *Commonwealth* v. *Carrion, supra* at 268. It is enough to say that the ; evidence makes abundantly clear the defendant instigated this violent and near tragic conflict, and he did not, at any time, "withdraw[ ] in good faith from the conflict and announce[ ] his intention to retire."

2. *Armed robbery.* The defendant was convicted of armed robbery of Trooper Harding, the property taken being her handgun. See G. L. c. 265, § 17, as amended through St. 1952, c. 406, § 1.[3] The defendant contends that as he was not armed when he took the gun and did not use it to "effectuate the taking," he could not have committed an armed robbery. We do not reach the question whether the defendant could be considered to have used the weapon in order to take it from Harding during the struggle in her automobile. Thereafter, the defendant picked up the gun from the street and attempted to flee. Harding immediately pursued him and quickly overtook and tackled him. Thereupon, the defendant used Harding's gun to shoot her in an attempt to complete the theft. At least to this point (and probably to the time when Harding tackled the defendant a second time), "the jury could see the episode as a continuum and reject as a manufactured abstraction," *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 624 (1986), that the theft from Harding was completed when the defendant picked the gun up from the street and attempted to flee.[4] Cf. *Commonwealth* v. *Dev-*

---

[3]"Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished. . . ."

[4]The judge instructed the jury that, "[i]f the Commonwealth proves beyond a reasonable doubt that the defendant armed himself with a dangerous weapon after the taking of the property and used that dangerous weapon to effectuate the taking of the property or to effectuate his escape from the scene of the taking, that is sufficient to convert a robbery into an armed robbery." The defendant did not object to this instruction and makes no argument on appeal that it was erroneous. See Annot., Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather than in Taking Property, as Element of Robbery, 93 A.L.R.3d 643 (1979); Model Penal Code § 222.1(1) (Official Draft 1962).

*ereaux*, 256 Mass. 387, 392 (1926). " 'The crime of armed robbery, an aggravated form of robbery, is based in part on the potential for injury that arises from the possession of a dangerous weapon.' *Commonwealth* v. *Howard*, 386 Mass. 607, 611 (1982). That potential for injury does not depend on the precise moment at which the defendant becomes armed, as long as he becomes armed at a point directly related to the commission and completion of the robbery" (footnote omitted). *Commonwealth* v. *Boiselle*, 16 Mass. App. Ct. 393, 400 (1983), and authorities cited. See *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 94-95 (1986), and authorities cited. There was no error.

*Judgments affirmed.*