## Commonwealth vs. Craig Johnston.

Hampden. February 9, 2006. - April 14, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Assault with Intent to Murder. Malice. Mental Impairment. Practice, Criminal,*
Instructions to jury.

This court concluded that for the purposes of a criminal trial on a charge of
armed assault with intent to murder, mental impairment, which may be
considered on the question whether a defendant formed a specific intent to
kill (i.e., malice), is not a factor that mitigates an otherwise proved offense.
[558-560]

At the trial of an indictment charging assault with intent to murder, the
defendant's evidence of mental depression did not, in the circumstances,
warrant an instruction regarding his ability to form a specific intent to kill
[560-561], and absent evidence of justification, excuse, or traditionally
recognized mitigation, there was no error in omitting an instruction of
malice as an element of the charged crime [561-562].

Indictment found and returned in the Superior Court Department on January 23, 2003.

The case was tried before *Daniel A. Ford*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Daniel Bennett* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

Cowin, J. The defendant was convicted of armed assault with intent to murder, G. L. c. 265, § 18 (*b*).[1,2] He claims that the judge erred in not instructing the jury that malice, defined as

---

[1]General Laws c. 265, § 18 (*b*), reads in pertinent part:

"Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder shall be punished by imprisonment in the state prison for not more than twenty years."

[2]The defendant was also convicted of assault and battery, G. L. c. 265, § 13A (*a*). He does not appeal from that conviction. Before trial, he pleaded guilty to other related offenses.

"absence of justification, excuse, and mitigation," is an element of the offense. *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). He argues that the omission created a substantial risk of a miscarriage of justice because his depressed mental state could constitute mitigation that the Commonwealth must disprove. He appealed on this ground and the Appeals Court affirmed. See *Commonwealth* v. *Johnston*, 63 Mass. App. Ct. 680 (2005). We granted the defendant's application for further appellate review. We clarify that mental impairment is not a factor that mitigates an otherwise proved offense, and we hold that where no evidence of justification, excuse, or traditionally recognized mitigation is introduced at a trial of a charge of assault with intent to murder, a judge need not instruct on malice. We accordingly affirm the conviction.

*Background.* The evidence at trial is summarized below. The defendant, Craig Johnston, and his wife, Susan, had been married for nearly twenty-seven years at the time of the incident. Susan managed the household finances. In 2002, she failed to make a number of house mortgage payments. She intended to satisfy the mortgage with a loan, but the date of the foreclosure "escaped" her. She did not inform the defendant of the missed payments or the foreclosure. Thus, he was shocked when representatives from their bank arrived at the house one morning and conducted a foreclosure auction.

That evening, the defendant got drunk and became enraged about the foreclosure. He threw beer bottles at his wife and beat her with a broom handle and a basting brush. The beating left her with a number of bruises on her face. The next morning, Susan left for work and did not return home. The defendant, who did not go to work on the day of the foreclosure auction, stayed home the rest of the week drinking beer and bourbon. Friends and family members (all of them related to Susan) who visited him during this period described him as drunk, constantly crying, and depressed. The defendant testified that he was "upset and depressed over the fact that we were losing the house and that Susan had lied to me," and that he was "emotionally a wreck." A number of his visitors recommended that he go to a hospital for help, but he did not do so.

On the sixth day after the auction, the defendant did not

drink. He attached a knife to his right hand with electrical tape and went to the hospital where his wife worked. Hiding the hand with the knife in his pocket, he was able to proceed to Susan's work area without incident. He grabbed her by the hair with his left hand, put the knife to her throat, and, according to Susan and a coworker, yelled that he was going to kill her. The coworker tackled the defendant, and a few employees restrained him until a police officer arrived, cut the tape securing the knife to his hand, and arrested him. The defendant struggled with employees and the police officer until the knife was cut from his hand.

The defense focused on a lack of intent to kill. The defendant testified that he "had a plan for a couple of days" to "go over to the hospital and take a weapon . . . and threaten Susan, get arrested, [and] cause a big scandal that would . . . teach her how I felt." He explained various reasons for wanting to get arrested: "I just couldn't stand the fact of sitting there in the house waiting to get evicted" and having to pack the furniture and possessions. "I figured if I was locked up someplace, she'd have to do it herself. I also figured if I was locked up . . . she'd have to learn how to survive on one [paycheck]."

The defendant testified that he did not say he was going to kill Susan and that he did not actually put the knife to her throat. He maintained that he "never intended to murder [his wife]," and did "[n]ot really" intend to harm her physically. "I wanted to threaten her," he said, "and I wanted to scare her and I wanted to make a big scene . . . [b]ut . . . [physical harm] never entered my mind." He explained that he secured the knife with tape because he had injured his hand on the night he beat Susan, and he wanted to be able to carry a knife in order to create a "big scene." He admitted that it was a "stupid" plan, a result of the fact that he "was just real emotional."

In a pretrial conference the defense attorney informed the judge that he did not intend to rely on provocation (a traditional mitigating circumstance) as a defense. The defense attorney's closing argument emphasized that the defendant's depressed state drove him to plan an irresponsible scheme to hurt and humiliate Susan, but not to kill her. At the charge conference, defense counsel did not request any specific instructions, and

he agreed with the judge that there was no evidence of intoxication on the day of the incident. The judge instructed the jury, without objection, that on the charge of armed assault with intent to murder, the Commonwealth needed to prove that the defendant (1) was armed with a dangerous weapon, (2) assaulted the victim, and (3) "possessed a specific or actual intent to cause the death of the [victim]." The judge also instructed that if the Commonwealth did not prove all the elements of armed assault with intent to murder, the defendant, upon proper proof, could be convicted of the lesser included offense of assault. There was no instruction on assault with intent to kill and none was requested.[3]

*Discussion.* Conviction of assault with intent to murder requires proof of assault and a specific intent to kill that equates with malice.[4] *Commonwealth* v. *Henson*, 394 Mass. 584, 590-591 (1985). "Malice" in this context "means only the absence of justification, excuse, and mitigation." *Id.* at 591. Malice necessarily exists when specific intent to kill is proved and there is no evidence of justification, excuse, or mitigation.[5] See *Commonwealth* v. *Nardone*, 406 Mass. 123, 132 (1989). Justification and excuse render the assault noncriminal, while mitigation reduces the crime from assault with intent to murder to assault with intent to kill. *Id.* at 130-131. Mitigation traditionally involves circumstances where we understand a defendant's intent to kill to arise from the frailty of human nature in the face of certain circumstances, such as heat of passion induced by reasonable provocation, sudden combat, or excessive force in self-defense. *Id.* "Once evidence of mitigation is introduced . . . the judge must instruct the jury accordingly. But if no such evidence is introduced, the prosecution satisfies its burden on

---

[3]Assault with intent to kill is a lesser included offense of armed assault with intent to murder. Its elements are "assault, specific intent to kill, *and* [a] mitigating factor." *Commonwealth* v. *Nardone*, 406 Mass. 123, 131 (1989). The greater offense carries a maximum penalty of twenty years imprisonment, G. L. c. 265, § 18 (*b*); assault with intent to kill carries a maximum prison sentence of ten years, G. L. c. 269, § 29 (assault with intent to commit a felony).

[4]The defendant raises no issue regarding the "armed" portion of the charge, and we confine our discussion to assault with intent to murder.

[5]Conversely, an intent to kill that is formed in response to mitigating circumstances is not a malicious intent to kill.

the issue of malice by proving specific intent to kill." *Id.* at 132.

Although his trial counsel did not object to the instruction given, the defendant claims that the absence of a malice instruction created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Robinson*, 444 Mass. 102, 105 (2005). Specifically, the defendant argues that evidence of his depressed state could have constituted mitigation precluding conviction for assault with intent to murder. This argument is based on our statement in *Commonwealth* v. *Boateng*, 438 Mass. 498, 517 (2003), that "frailty due to mental illness can be a mitigating factor that would vitiate malice and reduce an assault with intent to murder to an assault with intent to kill." The defendant makes this argument despite the fact that at trial his sole defense was that he intended to humiliate his wife, not kill her; thus, he never previously suggested that his alleged mental condition somehow led to an intent to kill.

We begin by clarifying that, despite the *Boateng* language, mental impairment is not a mitigating factor. The confusion may have arisen because of the different definitions of "malice" for the offense of murder and for the offense of assault with intent to murder. In murder cases, "malice" has a three-prong definition: unmitigated (1) specific intent to kill, (2) specific intent to do grievous bodily harm, or (3) intent to do an act, in circumstances known to the defendant, that a reasonable person would know creates a plain and strong likelihood of death. Model Jury Instructions on Homicide 20-21 (1999). See *Commonwealth* v. *Sanna*, 424 Mass. 92, 100-101 & n.13 (1997); *Commonwealth* v. *Judge*, 420 Mass. 433, 437-438 & n.3 (1995). When a finding of malice in murder requires a finding of specific intent, mental impairment or intoxication can be relevant to whether a defendant was able to form that specific intent. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470-471 (1987) (mental impairment); *Commonwealth* v. *Henson, supra* at 592-593 (intoxication). In contrast, malice for assault with intent to murder means an intent to kill in the "absence of justification, excuse, and mitigation," *Commonwealth* v. *Henson, supra* at 591. While mental impairment may be considered in both contexts on the question whether a defendant formed a

specific intent to kill (or, in the murder context, a specific intent to cause grievous bodily harm), it is *not* a mitigating factor that would reduce murder to manslaughter or assault with intent to murder to assault with intent to kill.

To the extent that the *Boateng* case implied anything contrary to the above, that was not our intention. Mental impairment simply may be relevant to a defendant's capacity to form specific intent to kill in both situations.[6] See *Commonwealth* v. *Grey, supra.* The *Boateng* case was not meant to expand the traditional definition of mitigation.[7]

Having clarified that mental impairment is not a mitigating factor, we turn to the defendant's claim that the judge instructed the jury incorrectly. He contends that the judge should have instructed that "[t]here must be both malice, which in this instance means only the absence of justification, excuse and mitigation, and the specific intent to kill." He claims that the instruction that the Commonwealth "must prove a specific or actual intent to cause . . . death" was insufficient.

First, we consider whether the defendant's evidence of depression required instruction regarding his ability to form a specific intent to kill. We address this point even though the defendant does not raise it on appeal because *Commonwealth* v. *Boateng, supra,* may have led him to focus his appellate argument on the malice element. There was no error in not giving such an instruction. The defense centered solely on the defendant's claim that he had no intent to kill his wife, but that the assault was part of a deliberate plan to humiliate her and get himself locked up. The evidence of depression was used only to explain why he embarked on this "stupid" scheme; it supported his contention that he was led to form a specific intent to threaten and humiliate the victim. He did not claim that his depression precluded a specific intent to kill. Therefore, an instruction regarding the effect of mental impairment on his

---

[6] A mental disease or defect can also render a person not responsible for criminal conduct due to a lack of substantial capacity to appreciate the wrongfulness of such conduct or conform such conduct to the law. See *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-548 (1967).

[7] At oral argument, defense counsel conceded that if the suggestion in *Commonwealth* v. *Boateng,* 438 Mass. 498, 517 (2003), that mental impairment can constitute mitigation is not the law, then his argument would fail.

ability to form a specific intent to kill was not warranted. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 721-722 (1998) (provocation not "live" issue at trial).

We conclude also, as has the Appeals Court, that absent evidence of justification, excuse, or mitigation, there was no error in omitting an instruction on malice as an element of assault with intent to murder. See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. 667, 674 (2004), cert. denied, 126 S. Ct. 107 (2005). We previously have explained that once some credible evidence of mitigation is introduced, the Commonwealth bears the burden of proving an absence of mitigation beyond a reasonable doubt and the judge must instruct the jury accordingly. But if no such evidence is introduced, the prosecution satisfies its burden by proving specific intent to kill. *Commonwealth* v. *Nardone, supra* at 132 ("Once evidence of mitigation is introduced, therefore, malice *becomes* an issue and the judge must instruct the jury accordingly" [emphasis in original]). In such cases, clear instructions on the intent to kill assure that a conviction rests on all requisite findings.[8]

We acknowledge our previous statements that even when malice is not at issue in an assault with intent to murder case, it is preferable for a judge to instruct the jury that there is a malice element that necessarily exists if the jury find a specific intent to kill. See *Commonwealth* v. *Nardone, supra*; *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 65 (1989). Notwithstanding these cases, today we hold that there is no need to instruct on malice when there is no evidence of justification, excuse, or mitigation. If there is evidence of one of those factors, the jury

---

[8]We have considered whether the defendant was misled by our language in *Commonwealth* v. *Boateng*, 438 Mass. 498, 517 (2003). There was no reference to that case during the trial, no request for a malice instruction or a mitigation instruction, and no other suggestion that defense counsel introduced evidence or tailored his trial strategy in response to the *Boateng* language. The concept of mitigation only arose once, tangentially, when defense counsel informed the judge that he did not intend to rely on provocation, a traditional mitigating circumstance, as a defense. We note also that the defendant's evidence, even that of depression, was used only to explain an intent other than to kill. None of the evidence of depression was used to explain an actual intent to kill, which would be necessary had the defense been tailored to raise an issue of mitigation under the language of the *Boateng* case.

should be instructed that it is the Commonwealth's burden to prove the absence of that factor.

*Judgment affirmed.*