## Commonwealth *vs.* Joshua Lewis.

No. 09-P-1276.

Norfolk. October 12, 2011. - January 12, 2012.

Present: Green, Hanlon, & Carhart, JJ.

Further appellate review granted, 461 Mass. 1110 (2012).

*Armed Assault with Intent to Murder. Intent. Evidence,* Intent, Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Argument by prosecutor.

At the trial of an indictment charging assault with intent to murder, the evidence presented by the Commonwealth supported an inference that the defendant specifically intended to kill the victim and had the apparent ability to do so. [121-123]

At a criminal trial, the judge did not abuse her discretion by admitting in evidence a criminal defendant's inculpatory statement, where the statement, which was voluntarily made, served to rebut the defense's theory that a police officer had "planted" a firearm on the defendant. [123]

At a criminal trial, certain statements in the prosecutor's closing argument, although improper [123-125], did not constitute prejudicial error, where, although the judge declined to give specific and contemporaneous curative instructions, the Commonwealth presented overwhelming evidence of the defendant's guilt [125-127].

INDICTMENTS found and returned in the Superior Court Department on September 28, 2006.

The cases were tried before *Barbara A. Dortch-Okara,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Robert W. Nelson, Jr.,* Assistant District Attorney, with her) for the Commonwealth.

CARHART, J. The defendant was convicted of assault with intent to murder and various firearms offenses after he pointed a gun at a State trooper. On appeal, the defendant challenges the sufficiency of the Commonwealth's evidence of his specific intent to kill the trooper and argues that an erroneously admitted

statement and the prosecutor's improper closing argument deprived him of a fair trial.[1] We conclude that the Commonwealth presented sufficient evidence of the defendant's specific intent to kill, the defendant's statement properly was admitted, and the prosecutor's closing argument, while improper, likely did not affect the jury's decision.[2] Therefore, we affirm.

*Background.* The Commonwealth presented evidence that on July 26, 2006, Troopers George Demos and Gregory Keane agreed to meet in the parking lot of a restaurant on Route 27 in Stoughton. Keane arrived first and, while waiting for Demos, noticed that a passing car's inspection sticker bore the letter "R," standing for "rejected." Demos, who arrived as Keane made this observation, had been following the vehicle and saw it turn abruptly into the restaurant's parking lot without signaling. Demos observed that the vehicle's three occupants, later identified as the defendant, Peter Le, and Ren Pho, were making furtive movements and looking back at him. After consulting with Keane, Demos decided to stop the vehicle when it departed from the parking lot. He stopped the vehicle as soon as it pulled onto Route 27.

Keane followed and parked his cruiser behind Demos's cruiser. As Demos approached the vehicle, he noticed a strong odor of burnt marijuana and observed the occupants moving around. Le was driving the vehicle, Pho was in the passenger seat, and the defendant was in the back seat. Demos asked Le for his license and registration, and as Le gave the documents to Demos, Demos observed that Le's hands were shaking. Demos looked at Pho, who also seemed nervous. Pho moved his hands to an area where Demos could not see them. Concerned for his safety, Demos ordered Pho to step out of the vehicle. Demos pat frisked

---

[1]The defendant also argues that the trial judge improperly instructed the jury on the crime of assault. The judge's instruction closely adhered to the model jury instruction. See Massachusetts Superior Court Criminal Practice Jury Instructions, Model Jury Instructions on Assault § 2.19 (Mass. Cont. Legal Educ. 1999). While the defendant argues that the judge's instruction impermissibly inserted her opinion of the facts into the charge, we are confident that the jury understood from the totality of the judge's instructions that the decision as to the facts was entirely their own.

[2]The attorney arguing for the Commonwealth on appeal was not the trial prosecutor.

Pho and found a gun in his waistband. Demos notified Keane that Pho had a gun, seized the gun (a .38 caliber Beretta pistol), and put Pho on the ground. As Demos did so, the defendant fled from the vehicle and ran across Route 27. Demos followed and ordered him to stop several times. Demos saw the defendant reach toward his waistband as he ran into a parking lot on the other side of Route 27. Once in the parking lot, the defendant reached into his pocket, removed a gun, turned toward Demos, and pointed the gun at him. Demos ordered the defendant to drop the gun. When the defendant did not, Demos shot him twice.[3] When the defendant continued to point the gun at Demos, Demos fired another round, which knocked the defendant to the ground.[4] Eventually the defendant put the gun in his pocket and raised his hands. Demos approached the defendant; removed the gun (a .38 caliber Colt pistol) from his pocket, and put it out of the defendant's reach. There was ammunition in the Colt's clip, but there were no rounds in the chamber.

Demos radioed to Keane requesting a medical bag so that Demos could attend to the defendant's injuries. Keane brought a bag to the parking lot and, as he was setting it down, asked the defendant how old he was. The defendant replied, "It doesn't matter . . . I'll beat this, I'll beat this again."

The defense at trial was that Demos planted the Colt on the defendant to cover up an unjustified shooting. Both Le and Pho testified for the defense, and both were impeached with their criminal records. Pho testified that he had both the Beretta and the Colt in his possession when the car was stopped and that Demos removed the Colt from his waistband. Pho also stated that Demos took the Colt with him when he pursued the defendant.

*Discussion.* 1. *Required finding of not guilty.* In reviewing a ruling on a motion for a required finding of not guilty, we analyze the evidence in the light most favorable to the Commonwealth to determine whether the Commonwealth has presented sufficient evidence to permit the jury to infer the existence of the essential elements of the crime charged. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). The defendant argues that the judge erroneously denied his motion for a

[3]These two shots struck the defendant in the elbow and in the abdomen.
[4]This shot hit the defendant in the leg.

required finding on the charge of assault with intent to murder because there was insufficient evidence of his specific intent to kill Demos.[5] More specifically, the defendant contends that he could not have killed Demos because the evidence showed that a slide mechanism would have to be manipulated to insert a bullet into the chamber before the Colt could be fired.

Evidence of the defendant's specific intent to kill Demos consisted of the defendant being in a vehicle with an individual who was carrying a loaded gun; fleeing, although he was not suspected of any crime; refusing to stop when ordered to by Demos; turning and pointing a gun at Demos after being told to drop it; continuing to point a gun at Demos after being shot twice; refusing to drop the gun until Demos incapacitated him with a third shot; and never voluntarily surrendering the gun.[6] And when the defendant turned and pointed a gun at Demos, Demos believed the defendant was "going to kill [him]. He [wa]s going to try to shoot [him]."

The defendant's challenge is unavailing, as the evidence outlined, *supra*, supports an inference that the defendant specifically intended to kill Demos and had the apparent ability to do so. See *Commonwealth* v. *Moran*, 453 Mass. 880, 885 (2009) (intent "may be inferred from the facts and circumstances presented"). See also *Commonwealth* v. *Williams*, 312 Mass. 553, 557 (1942); *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). "When dealing with circumstantial evidence, it is not essential that the inferences drawn from the facts or circumstances be necessary inferences." *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54 (1975). It is enough if they are reasonable and possible. *Id.* at 54. The defendant's arguments are "in reality directed toward the weight and credibility of the evidence, a matter wholly within the province of the jury."[7] *Commonwealth*

---

[5]The defendant was charged with assault with intent to murder, which requires a specific intent to kill. See *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). The difference between the crimes of assault with intent to murder and assault with intent to kill is malice, meaning the "absence of justification, excuse, [or] mitigation." *Commonwealth* v. *Nardone*, 406 Mass. 123, 130 (1989), quoting from *Henson, supra*. The defendant does not argue that the Commonwealth failed to present sufficient evidence that he acted with malice.

[6]Demos testified that he removed the gun from the defendant's pocket.

[7]Moreover, the judge instructed the jury that "the defendant must have

v. *Nardone*, 406 Mass. 123, 129-130 (1989). Thus, there was no error in the denial of his motion for a required finding.

2. *Defendant's statement.* Nor was there error in the admission of the defendant's statement, "I'll beat this, I'll beat this again," as rebuttal evidence.[8] The defendant argues that the statement is ambiguous and thus has little probative value, while the risk of prejudice is demonstrably high because the jury convicted him despite weaknesses in the Commonwealth's case. The defendant is correct — the statement is subject to numerous interpretations. It could indicate that the defendant has a criminal history, or that he has been falsely accused on a prior occasion. Or it could mean that the defendant, who by all accounts had committed no crime before he fled across Route 27, and who had nothing other than a gun in his possession when he was shot, had used the gun to threaten Demos. The defendant does not argue that the statement was involuntary, and it is "fundamental" that an inculpatory statement is admissible if it is voluntarily made. *Commonwealth v. Sheriff,* 425 Mass. 186, 192 (1997). The statement nevertheless was admissible to rebut to the defense's theory that Demos planted the gun. See *Commonwealth v. Guidry,* 22 Mass. App. Ct. 907, 909 (1986). There was no abuse of discretion in admitting this evidence. See *Commonwealth v. Dargon,* 457 Mass. 387, 401 (2010).

3. *Prosecutor's closing argument.* a. *Improper statements.* Trial counsel objected to several statements in the prosecutor's closing argument that the Commonwealth concedes, as it must, were improper. We address each statement in turn, beginning with a particularly disturbing one: "The entire defense in this case, I'd suggest to you, is a sham. It's choreographed, it's staged." The Supreme Judicial Court stated more than ten years ago that this exact language "should not be tolerated." *Commonwealth v. McCravy,* 430 Mass. 758, 765 (2000). The pros-

---

shown, must have been shown to possess an actual subjective intent to kill. An intent merely to disable, to scare off another person is not sufficient intent. The intent to inflict bodily injury or to do serious bodily harm is also not sufficient."

[8]The trial judge, in a pretrial ruling, precluded the Commonwealth from presenting the statement in its case-in-chief. However, she indicated that the statement might be admissible as consciousness of guilt evidence if the defendant argued that Demos had planted the gun near the defendant.

ecutor should have known that such argument was "grossly improper." *Ibid.*

Similarly inappropriate was the prosecutor's argument that:

> "The lies here came from there. As you look over all of this evidence, I suggest to you that will be obvious to you that the lies came from this table. And I'm not leaving out the attorney either, the questions that were asked and the way they were posed."

Even if the prosecutor was responding to defense counsel's argument, as the Commonwealth contends, "a prosecutor may [not] simply 'fight fire with fire' and exceed the normally proper limits of argument because defense counsel made an improper, excessive argument."[9] *Commonwealth* v. *Kozec,* 399 Mass. 514, 519 (1987).

The defendant correctly argues that the prosecutor should not have repeatedly characterized the defendant, Le, and Pho as "street thugs." While the prosecutor's argument that Demos, upon stopping the vehicle, "has no way of knowing whether [the defendant, Le, and Pho] are three people that are just coming from MIT in a study group or if they're three street thugs with guns and drugs" was proper, his statement that "that's how it turned out on this date" improperly imputed Le's and Pho's prior convictions to the defendant. See *Commonwealth* v. *Perry,* 357 Mass. 149, 151 (1970) ("There can be no finding of guilt by association"). There was no evidence of the defendant's other activities,[10] his "character was not in issue," and the evidence "could not have been used to show criminal propensity." *Kozec, supra* at 525.

Finally, the prosecutor's argument that the defendant was

---

[9]We express no opinion on defense counsel's closing.

[10]The prosecutor referred to a crime scene videotape that was introduced in evidence and that apparently depicted a "wad of money" in the defendant's front pocket. The prosecutor stated: "Of course, all us unemployed people have a big wa[d] of money in our pocket. Where's my money? They are street thugs who are out, and what they're going to do with those guns, luckily, we didn't get a chance to find out." No evidence regarding money in the defendant's pocket was presented. While counsel are permitted to argue the facts and fair inferences derived therefrom, it is improper to make an argument wholly unsupported by the evidence. *Kozec, supra* at 522.

"not going to beat anything. Nothing. Because the street thugs aren't deciding this case. You are," was improper because it could be interpreted to imply "that it was the jury's duty to convict." *Commonwealth* v. *Miller*, 457 Mass. 69, 80 (2010).

b. *Prejudice.* The inquiry does not end here, however. "The standard for determining whether a conviction must be reversed is whether the improper statements made by the prosecutor 'constituted prejudicial error.' " *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), quoting from *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). An error is prejudicial if it "possibly ma[d]e a difference in the jury's conclusions." *Kozec, supra* at 518. We consider whether the defendant objected, the judge's instructions, the centrality of the error to the case, "the jury's ability to recognize hyperbole," and "the strength of the Commonwealth's case" in making this determination. *Commonwealth* v. *Torres*, 437 Mass. 460, 465 (2002).

Although the defendant objected to each of the improper statements, the judge declined to give specific and contemporaneous curative instructions.[11] Contrast *McCravy*, 430 Mass. at 765 (no prejudicial error where "the judge gave prompt, forceful, curative instructions in the midst of the prosecutor's argument").[12] The theory of the defense at trial was that Demos planted the gun to cover up an unjustified shooting, which the Commonwealth rebutted through Demos's testimony and the testimony of several civilian witnesses who either saw the Colt in the defendant's hand before he was shot or saw it within an arm's reach of the defendant after he had been incapacitated.[13]

---

[11]Seeing "no basis for a mistrial or even an objection," the trial judge stated at sidebar:

"Now, of course, I give instruction, as I normally do, that the jury is not to decide this case on the basis of the arguments of the attorneys and that they are arguing for a particular position and it's up to the jury, and I will give the same sort of strong instruction in this case."

[12]The trial judge's refusal to give curative instructions is particularly troubling in light of the prosecutor's characterization of the defense as a "sham," as the Supreme Judicial Court has "said that, as to clear prejudicial excesses by the prosecutor, the preferable practice is for the judge to intervene then and there on his own motion." *Commonwealth* v. *Smith*, 387 Mass. 900, 911 n.7 (1983).

[13]One of the civilian witnesses was Dennis Denapoli, president of the city

The improper argument did not relate to the credibility of these witnesses. Rather, it questioned defense counsel's integrity and invited the jury to find the defendant guilty because his friends are criminals and, therefore, he also must be a criminal. Such appeals to sympathy create reversible error because they "do not misstate any piece of evidence, but rather obscure the clarity with which the jury would look at the evidence and encourage the jury to find guilt even if the evidence does not reach the level of proof beyond a reasonable doubt." *Santiago*, 425 Mass. at 501. We therefore must examine the strength of the evidence to determine whether a jury could have found the defendant guilty beyond a reasonable doubt without regard to the improper argument. *Ibid.*

Both Demos and a civilian witness testified that they saw the defendant reach into his waistband, turn, raise his arm, and point a gun at Demos. Although there was no bullet in the gun chamber at that moment, there were rounds in the clip. Such evidence, if credited by the jury, supports a strong case by the Commonwealth in its charge that the defendant assaulted Demos with the intent to murder him. Thus, while we disapprove in the strongest terms of the prosecutor's conduct, we conclude that "the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant."[14] *Id.* at 500.

council of the city of Brockton. Denapoli testified that he saw the defendant run across Route 27 followed by Demos, heard Demos order the defendant to stop, and saw the defendant turn and point a gun at Demos. He saw Demos shoot the defendant and saw the defendant land on his back as he fell to the ground. Denapoli's view was unobstructed, and he watched Demos come over and handcuff the defendant. Denapoli saw the same gun the defendant pointed at Demos on the ground within an arm's reach of the defendant, and Demos asked Denapoli to step on the gun until it could be secured. That gun later was identified as the Colt. Other witnesses saw the defendant run from Demos, heard Demos order the defendant to stop, saw the defendant turn toward Demos, saw the defendant fall, or saw the gun within an arm's reach of the defendant after the shooting had stopped. Demos and Denapoli were the only witnesses who saw the defendant turn and point the Colt at Demos.

[14]We note that we do not sit as triers of fact, and "[a]ny test concerning reversible error that requires an appellate court to determine whether a defendant is actually innocent is conceptually flawed because such a test converts the appellate function into the jury function." *Commonwealth* v. *Alphas*, 430 Mass. 8, 21 (1999) (Greaney, J., concurring). Without expressing any opinion as to the defendant's guilt or innocence, we conclude that reversal is not required because the Commonwealth's evidence could allow a rational trier of

This case would not present the close question it does had the judge promptly and forcefully instructed the jury in the wake of the prosecutor's improper statements. However, the judge did repeatedly instruct the jury that they alone were to determine the facts of the case, they alone were to weigh the evidence, and it was their recollection of the evidence that controlled.[15] "[W]e presume that jurors follow the judge's instructions." *Torres*, 437 Mass. at 464. While the impropriety of the prosecutor's argument and the judge's failure to instruct the jury are significant enough to make the question whether the defendant received a fair trial "close and difficult," we are certain, in light of the evidence at trial, "that the jury's conclusion was not clouded by the improper appeals and that their verdict was based on a dispassionate view of the evidence." *Santiago, supra* at 501-502.

*Judgments affirmed.*

---

fact to conclude beyond a reasonable doubt that the defendant assaulted Demos with the intent to murder him, without regard to the improper argument. Contrast *Commonwealth* v. *Salemme*, 395 Mass. 594, 602 (1985) (reversal required where "jury could not infer, beyond a reasonable doubt, an essential fact necessary to prove that [the defendant] was guilty of murder"); *Kozec*, 399 Mass. at 526 (reversal required where "prosecutor exceeded the limits of what could reasonably be argued on the evidence"); *Santiago, supra* at 502, 503 (reversal required where it was "at least possible that the prosecutor's invocation of sympathy and [improper] statement . . . might have so inflamed the jury that they returned a verdict of murder in the first degree even though a dispassionate jury might have found the defendant not guilty based on self-defense, or guilty of a lesser crime" because "the Commonwealth's case as tried was not so overwhelming as to overcome the errors committed by the prosecutor"), with this case (improper attack on defendant's character in prosecutor's closing argument not likely to have affected jury's verdict in light of corroborating testimony of civilian witness that defendant pointed gun at Demos; testimony of civilian witness that defendant fell on his back when he was shot, further corroborating Demos's account of incident; evidence that there was ammunition in Colt's clip; and undisputed evidence that defendant fled from police and stated that he would "beat this," indicating consciousness of guilt).

[15]The judge instructed the jury that, "as persuasive and as articulate as the attorneys may be, their arguments . . . are not a substitute for evidence in this case. The attorneys' arguments are intended to assist you in understanding the evidence and their contentions. They speak. They argue from the standpoint of the party they represent, jurors. The evidence . . . is in your hands and not in theirs so don't rely on the attorneys for the evidence in this case."